Statement of Facts.

# COMMONWEALTH v. NEW YORK, L. E. & W. R. CO.

## COMMONWEALTH v. TIOGA R. CO.

## COMMONWEALTH v. NEW YORK, P. & O. R. Co.

## COMMONWEALTH v. NEW YORK, L. E. & W. C. R. Co.

APPEALS BY COMMONWEALTH FROM THE COURT OF COMMON
PLEAS OF DAUPHIN COUNTY.

Argued June 2, 1891—Decided October 26, 1891.
[To be reported.]

1. Moneys received by a railroad company for the use of its tracks by the trains of another company in common with its own trains, computed at the rate of so much for each ton of freight and for each passenger carried, are not rents, or receipts from passengers and freight traffic, but receipts for tolls.

2. Such tolls are not included within the gross receipts taxable under § 23, act of June 1, 1889, P. L. 431, imposing a tax upon the gross receipts " from passengers and freight traffic transported wholly within this state," of every railroad company owning, operating or leasing any railroad.*

3. Construed in the light of preceding legislation, and of the fact that the well-defined word "tolls," appearing in prior taxing statutes, was omitted from the act of 1889, the words employed in that act apply only to receipts for carriage done by the company taxed, or by a company operating its works under a lease.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

Nos. 26, 27, 28, 29 May Term 1891, Sup. Ct.; court below, Nos. 31, 81, 82, 83 January Term 1891, C. P.

## NO. 26.

On September 25, 1890, the New York, Lake Erie & Western Railroad Company filed in the court below, to No. 31 January Term 1891, its appeal from an account settled by the auditor general and state treasurer charging the defendant with tax upon gross receipts for the six months ending December 31, 1889, under § 23, act of June 1, 1889, P. L. 431, and a specification of objections thereto.

---

* Cf. Commonwealth v. Railroad Co., ante, 38.

Decision of Court below.

After trial without a jury, on a submission under the act of April 22, 1874, P. L. 109, the court, McPHERSON, J., on January 5, 1891, filed the following decision :

FINDINGS OF FACT.

1. The defendant is a corporation of the state of New York, engaged in the business of transporting freight and passengers. Its railroad runs through the county of Susquehanna in this state.

2. It leases and operates, as one of its branches, a railroad lying wholly within this state known as the Jefferson branch, which extends from Carbondale to a connection with the defendant's main line in said county of Susquehanna. At Carbondale, the Jefferson branch connects with the railroad of the Delaware & Hudson Canal Co., a corporation engaged in mining and transporting coal, and also in transporting freight and passengers.

3. The canal company makes use of the Jefferson branch in the manner, for the purposes, and upon the terms specified in an agreement made April 7, 1885, which agreement is made a part of this finding.

4. Under the eighth clause of said agreement,* the canal company paid to the defendant, for the transportation of coal and merchandise during the six months ending December 31, 1889, the sum of $91,181.59. Of this amount, $90,638.43 was in respect of coal and merchandise transported by the canal company over the said Jefferson branch in transit to points in other states ; the said coal and merchandise when taken upon the cars and upon said Jefferson branch being destined and intended for shipment by continuous transportation upon a single way-bill from points in Pennsylvania to points in other states, and having been actually so transported to, and delivered at points in other states. And $543.16 was paid in respect of coal and merchandise taken up and put down within the state of Pennsylvania. The canal company has paid to the state treasurer a tax upon its gross receipts for the transportation of the coal and merchandise, in respect of which it paid to the defendant the said sum of $543.16.

---

* The agreements referred to in paragraphs 4, 5, 7, of this decision sufficiently appear in the report of Commonwealth v. Railroad Co., ante, 38.

Decision of Court below.

5. Under the sixteenth clause of said agreement, the canal company paid to the defendant the sum of $2,000, of which $1,000 was made up of half fares collected from local passengers taken up and put down within the state of Pennsylvania (upon which sum of $1,000 the canal company has paid tax to the state treasurer), and $1,000 was in respect of passengers carried inter-state by continuous transportation into, out of, or through the state of Pennsylvania.

6. The defendant also leases and operates, as one of its branches, a railroad known as the Buffalo, Bradford & Pittsburgh branch, extending from Buttesville, or Gilesville, Pa., to a connection with defendant's main line at Carrollton, in the state of New York. At Crawford junction, a point on this branch, the railroad of the Buffalo, Rochester & Pittsburgh Railway Co., (formerly the Rochester & Pittsburgh Railroad Co.,) connects with said branch. This last mentioned corporation is engaged in the transportation of freight and passengers.

7. The Buffalo, Rochester & Pittsburgh Railway Co. makes use of a part of the Buffalo, Bradford & Pittsburgh branch in the manner, for the purposes, and upon the terms specified in an agreement made October 20, 1882, which agreement is made a part of this finding. The part used lies partly in this state and partly in the state of New York.

8. Under this agreement, the amount paid to the defendant by the Buffalo, Rochester & Pittsburgh Railway Co., during the six months ending December 31, 1889, was $2,700, being one semi-annual payment. For the same period, the Buffalo, Rochester & Pittsburgh Railway Co. paid to the state treasurer a tax upon its gross receipts, so far as the same were derived from transportation between points both of which are within the state of Pennsylvania.

9. This settlement taxes the entire gross receipts of the defendant from its business in Pennsylvania (except receipts for carrying the mails), for the six months ending December 31, 1889, under § 23, act of June 1, 1889, and includes therein the sums paid by the canal company, and by the Buffalo, Rochester & Pittsburgh Railway Company.

10. The defendant, on October 1, 1890, paid to the state treas-

Decision of Court below.

urer the whole amount demanded, except the tax upon said sums
$91,181.59,

of      2,000      and $2,700.

----

$93,181.59

### CONCLUSIONS OF LAW.

In a former suit against this defendant, No. 141 January
Term 1890, Dauphin C. P., we decided inter alia that "the
rentals paid to the defendant by the canal company and by
the Buffalo, Rochester & Pittsburgh Railway Co., are 'receipts
for tolls,' within the meaning of § 7 of the act of 1879," and
were lawfully taxed by that section.   This section, however,
was specifically repealed by § 36 of the revenue act of June 1,
1889, P. L. 438, and the question is now presented whether
§ 23 of this latter act, which taxes certain gross receipts, has
continued this tax upon tolls.

It is certainly significant that different words are now used,
and that the well-known phrase, " tolls and transportation,"
which, with only slight and occasional variation, has served in
several statutes for twenty-five years, has been deliberately set
aside.   It first appears in § 1 of the act of August 25, 1864, P.
L. 988, in reference to the tonnage tax, in which it is declared
that all companies shall pay the tax " upon whose works freight
may be transported, whether by such company or by individuals,
and whether such company shall receive compensation for trans-
portation, for transportation and toll, or shall receive tolls only."
What the legislature meant by " tolls," appears in a later sen-
tence of the same section, which provides that " corporations
whose lines of improvement are used by others for the trans-
portation of freight, and whose only earnings arise from tolls
charged for such use, are authorized to add the tax hereby im-
posed to said tolls and collect the same therewith."   This is in
accord with a definition of the same word given by the Supreme
Court, in 1867, in Boyle v. Railroad Co., 54 Pa. 314 : " (Toll)
is a tribute or custom paid for passage, not for carriage ; always
something taken for a liberty or privilege, not for a service ;
and such is the common understanding of the word.   Nobody
supposes that tolls taken by a turnpike or canal company in-
clude charges for transportation, or that they are anything more
than an excise demanded and paid for the privilege of using

the way." See also Cumberland V. R. Co.'s App., 62 Pa. 218, and Penna. R. Co. v. Sly, 65 Pa. 205.

In 1866, by § 2 of the act of February 23, 1866, P. L. 82, the tax upon gross receipts was first laid, and this was upon *all* receipts. In 1868, by § 7 of the act of May 1, 1868, P. L. 108, the tonnage tax was continued, the identical language above quoted from the act of 1864 being repeated; and by § 8 thereof the tax on gross receipts was also re-imposed. Both these taxes were repealed by § 11 of the act of April 24, 1874, P. L. 68, and the tonnage tax never has been revived. In 1877, the tax on gross receipts was again imposed by § 5 of the act of March 20, 1877, P. L. 6, but it was now restricted to receipts " for tolls and transportation, telegraph business or express business; " and in this form, also, it was laid by § 7 of the act of June 7, 1879, P. L. 112.

It thus appears that the word " tolls " had received a similar legislative and judicial construction, and had been used in the taxing statutes for more than twenty years. Its meaning there was so free from doubt that, as far as we know, no question was ever raised upon it, until the present defendant took the appeal above referred to, No. 141 January Term 1890. As already stated, it was then decided that the sums of money received by the defendant from the canal company and from the Buffalo, Rochester & Pittsburgh Railway Co., were receipts for tolls; and, as the facts now are in all respects similar, we will repeat that decision. Being then, receipts for " tolls," and not receipts for " transportation," are they taxed by the act of 1889?

Section 23 of that act provides inter alia " That every railroad company, etc., . . . . . owning, operating or leasing any railroad . . . . . or other device for the transportation of freight or passengers, . . . . . shall pay to the state treasurer a tax of eight mills upon the dollar upon the gross receipts of said corporation . . . . . *received from passengers and freight traffic, transported wholly within this state,*" etc. The word " tolls " does not appear in the section, and its omission now after so long a use must have considerable weight in determining the scope of the words above italicized. In our opinion, they are an expansion of the word " transportation " as used in the earlier statutes, and are only intended to embrace money received for carriage done by the particular corporation taxed. As may be

Decision of Court below.

seen above, this is the clear meaning of receipts for "transportation" in the former acts, just as "toll" denotes money received in respect of carriage done by some other agency; and thus these two words were broad enough to cover receipts from all actual carriage of every sort. Therefore, when one of these long-used words is deliberately given up, we think the clearly defined idea for which it stood must go also, unless it is otherwise plainly seen to be retained. Instead of this retention being evident, however, the probabilities are decidedly the other way; the only doubt arises from the use of a new phrase which has not yet been construed. Considering the legislative history above referred to, however, we regard this phrase as equivalent to the old word "transportation," and as still meaning transportation done by the particular corporation taxed.

Our conclusions are

1. The receipts in controversy are receipts for tolls or as rental, and are not receipts from passengers and freight traffic transported by the defendant.[4]

2. They are not taxed by § 23 of the revenue act of June 1, 1889, P. L. 420.[5]

The prothonotary is directed to enter judgment for the defendant, if exceptions are not filed as required by law.

—Exceptions specifying, inter alia, that the court erred in its conclusions of law,[4] [5] and in not entering judgment for the full amount of the commonwealth's claim,[6] having been overruled, and judgment entered, the commonwealth took the appeal to No. 26, assigning for error:

4–6. The overruling of the commonwealth's exceptions.[4 to 6]

## NOS. 27, 28, 29.

At Nos. 81, 82, 83 January Term 1891, of the court below, appeals were entered by the Tioga Railroad Company, the New York, Pennsylvania and Ohio Railroad Company, and the New York, Lake Erie and Western Coal and Railroad Company, respectively, from accounts settled by the auditor general and state treasurer charging said companies with taxes on gross receipts under § 23, act of June 1, 1889, P. L. 431. These cases raised questions identical with that raised in No. 26, supra, the settlements taxing the defendants upon certain sums paid to them by other railroad companies in consideration of the use of their tracks for the trains of the latter companies,

respectively, under agreements similar to that mentioned in the findings of fact in No. 26. The carriage upon said tracks by the companies paying the sums aforesaid was exclusively between points in this state and points in other states. The cases having been tried without juries, upon submissions under the act of April 22, 1874, P. L. 109, the court, McPherson, J., on January 5, 1891, filed decisions which, after finding the facts in substance as above stated, and finding conclusions of law identical in substance with those set out in No. 26, supra, directed the entry of judgments for the defendants, nisi, etc. Exceptions having been overruled and judgments entered, the commonwealth took the appeals at Nos. 27, 28, 29, assigning for error in each case the overruling of exceptions to the said conclusions of law.

*Mr. W. U. Hensel*, Attorney General, *Mr. James A. Stranahan*, Deputy Attorney General, for the Commonwealth :

The tax authorized by § 23, act of June 1, 1889, P. L. 431, is called a tax on gross receipts. The defendant does not deny receiving the moneys the taxation of which is now in question, and we contend that it is plainly embraced within the enactment referred to. The court below laid stress upon the fact that the word " tolls," used in former acts, does not appear in the act of 1889, but the word " freight-traffic " means all that " tolls " was held to mean, and more ; as applied to a railroad, it comprehends the entire business, passenger as well as merchandise business : Webster's and Worcester's Dictionaries, words Freight and Traffic ; Anderson's Dict. of Law, 479 ; Penna. R. Co. v. Sly, 65 Pa. 205. A change in the revenue act in force prior to 1889 was rendered necessary by the decision in Phila. etc. Steamship Co. v. Pennsylvania, 122 U. S. 326, reversing the decision of this court reported in 104 Pa. 109. This change was made in the act of 1889, by limiting the taxation to gross receipts from traffic wholly within this state. The plain reading of the act carries with it the intention to tax all such gross receipts, from whatever source obtained. The reasoning of this court, in Boyle v. Railroad Co., 54 Pa. 314, is entirely consistent with our position.

*Mr. M. E. Olmsted*, for the appellees :

1. By § 7, act of June 7, 1879, P. L. 112, a tax was imposed upon the gross receipts of railroad and other transportation companies derived from "tolls and transportation, telegraph business or express business." As applied to receipts from inter-state transportation, this section was declared unconstitutional: Phila. etc. Steamship Co. v. Pennsylvania, 122 U. S. 326; W. U. Tel. Co. v. Pennsylvania, 128 U. S. 39; Commonwealth v. Canal Co., 1 Mona. 36. Other cases have held that, even when a railroad is wholly within the state, no tax can be imposed in respect of freight or passengers carried over it in transit to or from other states: The Daniel Ball, 10 Wall. 557; Wabash etc. Ry. Co. v. Illinois, 118 U. S. 557; Tonnage Tax Case, 15 Wall. 232; Norfolk etc. R. Co. v. Pennsylvania, 136 U. S. 114; Fargo v. Michigan, 121 U. S. 230; Patterson v. Telegraph Co., 127 U. S. 411; Pensacola etc. Tel. Co. v. Telegraph Co., 96 U. S. 1; Broeck v. Barge John M. Welch, 2 Fed. R. 364; Sherlock v. Alling, 93 U. S. 99; Gloucester Ferry Co. v. Pennsylvania, 114 U. S. 196.

2. In consequence of these decisions, the legislature, by § 23, act of June 1, 1889, P. L. 431, repealed § 7, act of 1879, and re-enacted the tax upon transportation companies, limiting it, however, to the receipts of such companies "from passengers and freight traffic transported wholly within this state." This language shows conclusively that it was intended to tax only such receipts as, under the decisions cited, were lawfully taxable. If the act of 1889 does attempt to tax the receipts now in controversy, it is subject to the same constitutional objection that applied to the former act. With the exception of two items, aggregating $1,543.16, all the receipts now in controversy were derived from inter-state transportation. And, as to the excepted items, the Delaware & Hudson Canal Co. has already paid the tax. To make the New York, Lake Erie and Western R. Co. liable in respect of them, would be to impose double taxation upon the same receipts, which is never presumed to have been intended, and is actually prohibited by the last proviso to § 23, act of 1889.

### NO. 26.

OPINION, MR. JUSTICE CLARK:

The only question in this case is whether or not the trackage

received by the New York, Lake Erie & Western Railroad Co. from the Delaware & Hudson Canal Co., for the use of the Jefferson branch under their agreement of April 7, 1885, and from the Buffalo, Rochester & Pittsburgh Railway Co., for the use of the Buffalo, Bradford & Pittsburgh road under their agreement of October 20, 1882, can be said to be "received from passengers and freight traffic," within the meaning of the twenty-third section of the act of June 1, 1889, P. L. 431. The cònstitutional questions involved were very recently settled in a case arising under the act of June 7, 1879, P. L. 112: Commonwealth v. Railroad Co., ante, 38.

The commonwealth's counsel contend that gross receipts "from passengers and freight traffic" is comprehensive enough to include what under previous legislation was taxed as tolls, and under that designation. The opinion of the court below contains a concise, but correct, history of the legislation on this subject. By the first section of the act of August 25, 1864, P. L. 988, a tonnage tax was imposed upon all companies, "upon whose works freight may be transported, whether by such company or by individuals, and whether such company shall receive compensation for transportation, for transportation and tolls, or shall receive tolls only;" and corporations whose lines were used by others for transportation of freight, and whose only earnings arose from tolls charged for such use, were authorized to add the tax thereby imposed to the tolls, and collect the same therewith. In 1866, by § 2 of the act of February 23d, P. L. 82, the tax upon gross receipts was first laid, and this was upon *all* receipts. In 1868, by § 7 of the act of May 1, P. L. 108, the tonnage tax was continued, the identical language above quoted from the act of 1864 being repeated; and by § 8 the tax on gross receipts was also re-imposed. Both these taxes were repealed by § 11 of the act of April 24, 1874, P. L. 68; but it was now restricted to receipts "for tolls and transportation, telegraph business, or express business;" and in this form also it was laid by § 7 of the act of June 7, 1879, P. L. 112. But, by the twenty-third section of the act of 1889, the tax is upon the gross receipts "received from passengers and freight traffic transported wholly within this state," etc. It is certainly a matter of some significance, if it was intended to tax all sums received as tolls or rents, that these or other apt words were not employed to express that intention.

It will be observed that in the case of railroads, etc., which are operated under a lease for a proportion of the gross receipts, the tax is imposed, not only upon the company leasing to, but upon the company leasing from another. The tax is imposed upon every railroad company, etc., owning, operating, or leasing to or from another. Both the lessors and the lessees, in such cases, are liable to this tax. The tax is upon the gross receipts received from passengers and freight traffic, transportation, etc.; that is to say, transportation upon the railroad in question under the lease; the lessor and the lessee being liable upon the amount of the gross receipts received by each, respectively, according to the contract of lease. Provision is therefore made in the last clause of the section that the taxes shall be apportioned in accordance with the terms of the agreement or lease, and that the commonwealth shall first look to the company operating the road, and, upon payment of the tax by that company, the company from which the said works are leased shall not be held liable, under this section, for any of the tax upon the portion of said receipts received by it as rental for the use of said works.

But it will be seen, upon a reference to the agreement mentioned in the case at bar, that the tolls or trackage are paid, not by any proportion of the gross receipts, but, except as to the local passengers on the Jefferson branch, by a specified sum per ton or per passenger, in either case not less than a sum specified, or in a gross sum named. The lessees, with the exception stated, are entitled to the entire gross receipts; the lessors receive nothing but the trackage, which is computed, not from the amount of the gross receipts, but at a certain rate per ton or per passenger. The trackage, therefore, is not a rent, for the lessors are themselves in possession of the road; it is a toll paid for passage or for the privilege of using the way, not for carriage or transportation: Boyle *v.* Railroad Co., 54 Pa. 314.

For the reasons so well stated in the opinion of the court below, we are of opinion that these tolls are not embraced in the gross receipts taxable under the provisions of the act of 1889.

The judgment is affirmed.

. NOS. 27, 28, 29.

OPINION, MR. JUSTICE CLARK:

For the reasons stated in Commonwealth v. New York, L. E. & W. R. Co. No. 26 May Term 1891,

The judgments are affirmed.