**Estate of Harry ROSENSTEIN, by
Mark S. ROSENSTEIN, Sole
Survivor, Petitioner,**

v.

**PUBLIC SCHOOL EMPLOYEES'
RETIREMENT SYSTEM,
Respondent.**

Commonwealth Court of Pennsylvania.

Argued June 13, 1996.

Decided Nov. 15, 1996.

Jay A. Hurvitz, Philadelphia, for Petitioner.

Michael J. Luparello, Assistant Counsel, Harrisburg, for Respondent.

Before PELLEGRINI and FRIEDMAN, JJ., and MIRARCHI, Jr., Senior Judge.

MIRARCHI, Jr., Senior Judge.

The estate of Harry Rosenstein (decedent), by his son Mark S. Rosenstein (Claimant), appeals from an order of the Public School Employes' Retirement Board (Board) denying Claimant's request to receive retirement benefits as a substitute survivor annuitant under Section 8507(j) of the Public School Employees' Retirement Code (Code), *as amended,* 24 Pa.C.S. § 8507(j).

The decedent was employed by the Philadelphia School District for twenty-nine years and was a member of the Public School Employees' Retirement System (System). In September 1971, the decedent retired and filed an application for retirement benefits with the System. In the application, the decedent elected to receive benefits under the Option 3 and designated his wife, Fannie Rosenstein, as a survivor annuitant. The Code describes the Option 3 as "[a] joint and fifty percent (50%) survivor annuity payable

during the lifetime of the member with one-half of such annuity payable thereafter to his survivor annuitant, if living at his death." Section 8345(a)(3) of the Code, *as amended,* 24 Pa.C.S. § 8345(a)(3).

On February 1, 1986, the decedent suffered pulmonary edema and was hospitalized. The decedent was also treated for expressive and receptive aphasia,[1] which limited his ability to communicate verbally. On February 16, 1986, the decedent's wife died following open heart surgery. The decedent was subsequently released from the hospital on February 28, 1986 and transferred to the Uptown Home for the Aged, where he remained until his death on August 2, 1986. The decedent did not designate a substitute survivor annuitant after his wife's death. In his will, the decedent devised his entire estate to his wife and, in the event that his wife predeceased him, to Claimant and Claimant's sister in equal amount.

In September 1986, the System was notified of the decedent's death. However, it had not been notified of the death of the decedent's wife. As a result, the System sent the decedent's wife a letter on September 17, 1986, informing her that in accordance with the Option 3, she would receive monthly retirement benefits of $461.21 per month for the remainder of her life and that upon receiving required documents, the System would pay the decedent's estate or his next-of-kin $60.88, prorated portion of the decedent's monthly retirement benefits for August 1986. The System received no response to its September 17, 1986 letter.

Subsequently, while reviewing family documents after his sister's death on March 12, 1992, Claimant came across the September 17, 1986 letter sent by the System to his mother. Claimant then contacted the System and was informed that he was only entitled to the prorated portion of the decedent's final monthly retirement benefit. Claimant appealed the System's decision, contending that he was eligible to receive retirement benefits as a substitute survivor annuitant and/or a beneficiary. After a hear-

---

**1.** "Aphasia" is defined as "impaired or absent comprehension of all communication by speech, writing, or signs, due to dysfunction of brain centers in the dominant hemisphere." Stedmann's Medical Dictionary 104 (25th ed.1990).

ing, the hearing examiner recommended that Claimant's request be denied. Claimant then filed exceptions with the Board.

█ The Board concluded, *inter alia,* that Claimant is ineligible to receive retirement benefits because the decedent did not designate him as a substitute survivor annuitant or a beneficiary, and that the 1971 retirement contract cannot be constructively reformed on the basis of the decedent's alleged mental incompetence in 1986. The Board accordingly denied Claimant's exceptions and denied his request for benefits. Claimant's appeal to this Court followed.[2]

█ It is well established that the retirement system is a creature of the legislature and that its members therefore have only those rights created by the retirement benefit statute. *Cosgrove v. State Employes' Retirement Board,* 665 A.2d 870 (Pa.Cmwlth. 1995). Further, the retiree's rights granted by the Code are so personal that no other person can exercise those rights on behalf of the members. *Id.*

█ When an employee retires and elects an option for retirement benefits, he or she enters into a contract with a retirement board. *Bowers v. State Employes' Retirement Board,* 29 Pa.Cmwlth. 561, 371 A.2d 1040 (1977). Thereafter, the employee is permitted to reelect an option and designate a substitute survivor annuitant only under limited circumstances provided in Section 8507(j) of the Code:

A member having designated a survivor annuitant at time of retirement shall not be permitted to nominate a new survivor annuitant unless such survivor annuitant predeceases him or unless the member is awarded a divorce or becomes married subsequent to the election of the option. In such cases, the annuitant shall have the right to reelect an option and to nominate

a beneficiary or a new survivor annuitant and to have his annuity recomputed to be actuarially equivalent as of the date of recomputation to the annuity in effect immediately prior to the recomputation. In no other case shall a benefit plan be changed by an annuitant.

The retiree's designation of a substitute survivor annuitant under Section 8507(j) must be made in writing; the retiree's mere oral expression of his or her intention to designate such annuitant is insufficient. *Myers v. State Employes' Retirement Board,* 86 Pa.Cmwlth. 552, 486 A.2d 529 (1984).[3] In addition, the retiree must provide with the System, *inter alia,* a proof of the age of the newly designated survivor annuitant for proper recomputation of monthly retirement benefits because the entire structure of the retirement annuity is based upon actuarial tables of the life expectancy of the annuitant. *Id.* When the retiree designates a substitute survivor annuitant pursuant to Section 8507(j), he or she enters into a new contract with the System. *Id.*

█ In this matter, the decedent did not exercise the right under Section 8507(j) to reelect the Option 3 and designate a new survivor annuitant after his wife's death. The decedent did not even express his intention to make such designation. Under these circumstances, the Board had no basis for recognizing Claimant as a substitute survivor annuitant. The 1971 retirement benefit contract was therefore still in effect at the decedent's death, and the Board was bound by its terms in deciding Claimant's request for benefits.

Claimant contends, however, that he should receive retirement benefits as the sole surviving next-of-kin because the decedent suffered from aphasia in 1986 and was therefore mentally incompetent to designate a substitute survivor annuitant.[4]

---

**2.** This Court's scope of review of an administrative board's final adjudication is limited to determining whether the adjudication is supported by substantial evidence, whether it accords with the law, or whether constitutional rights were violated. *Miller v. State Employes' Retirement System,* 156 Pa.Cmwlth. 83, 626 A.2d 679 (1993).

**3.** *Myers* involved the issues arising under Section 5907(j) of the State Employees' Retirement Code, *as amended,* 71 Pa.C.S. § 5907(j), which is identical to Section 8507(j) of the Code. Therefore, the holding in *Myers* is equally applicable to this matter.

**4.** In December 1983 and also in July 1986 after the death of the decedent's wife, the System sent

To support his contention, Claimant relies on *Estate of McGovern v. State Employees' Retirement Board,* 512 Pa. 377, 517 A.2d 523 (1986). In *McGovern,* the decedent retired and executed the retirement application designating his wife as the survivor annuitant. The decedent's wife died shortly thereafter, and the decedent died five days later. The decedent's son asserted that the options chosen by the decedent should be set aside because his father was mentally incompetent to enter into the retirement benefit contract, and that the decedent's estate was entitled to larger benefits under other option available at the time of the decedent's execution of the retirement benefit application.

After reviewing the circumstances surrounding the execution of the application, the Pennsylvania Supreme Court concluded that the estate failed to rebut, by clear, precise and convincing evidence, the presumption that an adult is competent to enter into an agreement, and that a signed document accurately expresses the state of mind of the signing party.

We find Claimant's reliance on *McGovern* inapposite. *McGovern* only stands for the proposition that an *existing* retirement benefit contract may be set aside on the basis of the retiree's mental incompetence to enter into the contract. In this matter, however, Claimant is not seeking to set aside the existing benefit contract. Claimant admits that the decedent was mentally competent when he executed his retirement application in 1971. Therefore, the decedent's alleged mental incompetence occurred fifteen years after his execution of the retirement benefit application is irrelevant in this matter and cannot be a basis for constructive *formation*

of a new contract between the decedent and the System for designation of a substitute survivor annuitant.[5]

 Claimant further contends that denial of his request for retirement benefits would result in unjust enrichment to the System.

In *Cosgrove,* the retirees invoked the doctrine of equitable estoppel against the State Employes' Retirement System to change the benefit plans selected in their application, alleging that they were misled by inadequate counseling on all the available options. This Court refused to apply the doctrine, concluding that grant of the requests for the change would require alteration of the unequivocal language under Section 5907(j) of the State Employees' Retirement Code.

Under identical Section 8507(j) of the Code, the retiree is not permitted to change the benefit plan unless he or she submits a written request for designation of a new survivor annuitant and all other required written documents. *Myers.* As in *Cosgrove,* in the absence of compliance with the statutory requirements the decedent's benefit plan under the 1971 contract cannot be changed based on the equitable principle of unjust enrichment.

Accordingly, the order of the Board is affirmed.

### ORDER

AND NOW, this 15th day of November, 1996, the order of the Public School Employes' Retirement Board in the above-captioned matter is affirmed.

---

to its members, including the decedent, the Bulletin Board, which contained an article explaining that the retirees under the Option 3 need to nominate new beneficiaries upon the death of the designated beneficiaries. Claimant argues that such evidence is irrelevant because the decedent could not designate a substitute survivor annuitant due to his mental incompetence.

5. Because we conclude that Claimant's mental capacity in 1986 is irrelevant to our disposition of the issues on appeal, we need not address the Board's conclusion that Claimant failed to establish the decedent's mental incompetence by clear, precise and convincing evidence. Suffice

to note the following uncontroverted facts found by the Board. The decedent's therapist noted on February 3, 1986 that he was globally aphasic, but that he was alert and cooperative and carried out a fairly comprehensible conversation. On March 3, 1986 after his wife's death, the decedent by letter bearing his own signature instructed the System to cancel the direct deposit of his monthly retirement benefits and send them directly to the Uptown Home for the Aged. During the relevant time, no one was acting under a power of attorney or as a guardian for the decedent.