**Betty L. BURRIS, Petitioner,**

v.

**STATE EMPLOYES' RETIREMENT BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 6, 1999.

Decided Feb. 3, 2000.

Wendy Dullea Bowie, Harrisburg, for petitioner.

Nicholas Joseph Marcucci, Harrisburg, for respondent.

Before SMITH, J., FRIEDMAN, J., and MIRARCHI, Jr., Senior Judge.

MIRARCHI, Jr., Senior Judge.

Betty L. Burris (Burris) appeals from an order of the State Employes' Retirement Board (Board) denying her request to purchase nonstate service credit for her service provided at military hospitals in the United States and abroad as an employee of the American National Red Cross (Red Cross) from May 1970 to May 1975 during the Vietnam War era. The issue presented to this Court is whether the service provided by Burris as a civilian employee of the Red Cross constitutes non-intervening "active military service" under Section 5304(c)(2) of the State Employes' Retirement Code (Retirement Code), as amended, 71 Pa.C.S. § 5304(c)(2), for the purpose of determining her eligibility to purchase nonstate service credit. We affirm.

Burris became a member of the State Employes' Retirement System (SERS) on January 23, 1981 when she was hired by the Department of Public Welfare. On May 17, 1996, Burris filed a Request for Cost Statement with SERS, seeking to purchase nonstate service credit for the period of her employment with the Red Cross from May 1970 to June 1978 pursu-ant to Section 5304(c)(2) of the Retirement Code, which allows SERS members to purchase creditable nonstate service for non-intervening "military service." After the SERS' Appeals Committee denied her request, Burris appealed to the Board limiting her request to the period of the Vietnam conflict from May 4, 1970 to May 7, 1975. On appeal, the hearing examiner held a hearing, at which Burris testified in support of her request. The relevant facts found by the hearing examiner are undisputed.

Burris was employed by the Red Cross, a civilian organization, in its Service in Military Hospitals Division since May 1970 and assigned to various military hospitals in the United States and abroad to care for military personnel. The Red Cross provides cooperation and assistance to the military pursuant to 10 U.S.C. § 2602(a), which provides that "[w]henever the President finds it necessary, he may accept the cooperation and assistance of the American National Red Cross, and employ it under the armed forces under the regulations to be prescribed by the Secretary of Defense." To facilitate the cooperation and assistance of the Red Cross, the United States government may provide employees of the Red Cross assigned to the military installations with transportation, meals, quarters, office space, warehousing, wharfage, means of communication, and free passports. 10 U.S.C. § 2602(b) – (d). When assigned to the military installations, the employees of the Red Cross are subject to various military regulations, such as uniform requirements, security clearance, and, in time of war, a trial by court-martial under the Uniform Code of Military Justice. Department of Defense Directive 1330.5 § V.C.3 and 4b.

In 1971, the Red Cross assigned Burris to overseas duties in Vietnam. Before the assignment, Burris received military clearance, underwent a physical examination conducted by the military and was immunized by the military against various diseases. She traveled to Vietnam via mili-

tary transport. She was first assigned to the 95th Evac Hospital in Da Nang and then to the 3rd Army Field Hospital in Saigon. Burris was required to wear a uniform issued by the Red Cross resembling a military uniform. During her stay in Vietnam, Burris received additional military clothing and equipment, such as a helmet, poncho, dog tags and military fatigues. She lived in military housing, had meals in the military mess, drove military vehicles, and endured some hardships of military life. Burris' identification card issued by the military indicated that she was a civilian noncombatant. Although her pay was issued in military scrip while she was abroad, she was paid by the Red Cross at its salary scales, not by the military.

After spending one year in Vietnam, Burris was transferred to the Weisbaden U.S. Air Force Hospital in Germany and then to the Philadelphia Naval Regional Medical Center in Philadelphia, Pennsylvania. Her employment contract with the Red Cross was at will, and she was not required to work for the Red Cross for a certain minimum term. She resigned from her position with the Red Cross on June 9, 1978. She did not receive a discharge form (DD–214 Form) from the military.

The hearing examiner found that while Burris provided valuable service to the military, she was never inducted into or discharged from the armed forces of the United States and that her service, therefore, does not constitute non-intervening "military service" under Section 5304(c)(2) of the Retirement Code and the regulations thereunder. Concluding that Burris is ineligible to purchase nonstate service

credit, the hearing examiner recommended that her request be denied. The Board subsequently denied Burris' exceptions, adopted the hearing examiner's decision and denied Burris' request.[1] Burris' appeal to this Court followed.

■ It is well established that the retirement system is a creature of the Legislature and that its members therefore have only those rights created by the retirement benefit statute. *Krill v. Public School Employes' Retirement Board,* 713 A.2d 132 (Pa.Cmwlth.1998); *Cosgrove v. State Employes' Retirement Board,* 665 A.2d 870 (Pa.Cmwlth.1995). The main purpose of the Retirement Code is to provide a state employee with retirement benefits for his or her "state service." Only under limited circumstances, SERS members are permitted to purchase "creditable nonstate service," i.e., "[s]ervice other than service as a State employee for which an active member may obtain credit." Section 5102 of the Retirement Code, *as amended,* 71 Pa.C.S. § 5102.

Categories of "creditable nonstate service" under the Retirement Code include, *inter alia,* (1) "intervening military service"[2] and (2) "military service other than intervening military service" (non-intervening military service) not exceeding five years. 71 Pa.C.S. § 5304(c)(1) and (2).[3] The term "military service" is defined as "[a]ll *active military service* for which a member has received *a discharge other than an undesirable, bad conduct, or dishonorable discharge.*" 71 Pa.C.S. § 5102 (emphasis added). The Board's regulations similarly define "military service" as "*active military service* rendered only to

---

1. In adopting the hearing examiner's decision, the Board corrected a few technical, typographical and citation errors raised by SERS.

2. The term "intervening military service" is defined as "[a]ctive military service of a member who was a State employee immediately preceding his induction into the armed services or forces of the United States in order to meet a military obligation excluding any vol-

untary extension of such service and who becomes a State employee within 90 days of the expiration of such service." 71 Pa.C.S. § 5102.

3. While the retirement statute is generally construed liberally, Section 5304(c) listing the categories of creditable nonstate service is a *limiting* provision. *Panko v. Public School Employees' Retirement System,* 89 Pa.Cmwlth. 419, 492 A.2d 805 (1985).

the Armed Forces of the United States." 4 Pa.Code § 243.6(c) (emphasis added). The term "active military service," however, is not further defined by the Retirement Code and the regulations.

■ Burris contends that her service provided at the military hospitals on assignment by the Red Cross constitutes non-intervening "active military service" and that she is therefore eligible to purchase nonstate service credit under Section 5304(c)(2) of the Retirement Code.[4]

■ At the outset, it must be noted that the Board, as an agency charged with execution and application of the retirement statute, is entitled to considerable deference in its construction of the retirement statute and the regulations promulgated thereunder. *Card v. Pennsylvania School Employes' Retirement Board,* 83 Pa. Cmwlth. 602, 478 A.2d 510 (1984). Consequently, the Board's interpretation of the retirement statute may not be overturned, unless it is clearly erroneous. *Christiana v. Public School Employes' Retirement Board,* 166 Pa.Cmwlth. 300, 646 A.2d 645 (1994), *aff'd,* 543 Pa. 132, 669 A.2d 940 (1996).

The object of statutory interpretation is to ascertain and effectuate the intention of the General Assembly. Section 1921(a) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(a). Words and phrases in a statute must be construed according to their common usage and plain meaning. 1 Pa.C.S. § 1903(a); *Commonwealth v. Stanley,* 498 Pa. 326, 446 A.2d 583 (1982). Further, statutes and parts of statutes are pari materia when they relate to the same persons or things or to the same class of persons or things, and as such, they should be construed together. 1 Pa.C.S. § 1932(a); *Philadelphia Gas Works to the Use of the City of Philadelphia v. Commonwealth,* 741 A.2d 841 (Pa.Cmwlth. 1999).

The term "active" is defined as, *inter alia,* "engaged in full-time service esp. in the armed forces." Webster's Third New International Dictionary 22 (1993). "Active duty" is defined in military law as "[t]he full-time status of being in any of the U.S. armed forces." Black's Law Dictionary 33 (7th ed.1999). In addition, the definition of "military service" under the Retirement Code includes the element of *"a discharge other than an undesirable, bad conduct or dishonorable discharge."* 71 Pa.C.S. § 5102 (emphasis added). Finally, "intervening military service" under Section 5304(c)(1) is "[a]ctive military service of a member who was a State employee immediately preceding his *induction into the armed services or forces of the United States ...."* 71 Pa.C.S. § 5102 (emphasis added).

Thus, when the definitions of "active," "active duty," "military service," and "intervening military service" are considered together, it is clear that the Legislature intended to include both induction into and a honorable discharge from the armed forces of the United States as required elements of "active military services."

■ Admittedly, Burris was neither inducted into nor discharged from the armed services or forces. She resigned from her civilian employment with the Red Cross in June 1978 and did not receive a discharge form from the military. Hence, the service, for which Burris seeks to purchase nonstate service credit, does not constitute "active military service" under Section 5304(c)(2) of the Retirement Code.

*See also Donovan v. State Employes' Retirement System,* 701 A.2d 310 (Pa. Cmwlth.1997), *appeal denied,* 551 Pa. 705, 712 A.2d 287 (1998) (the service provided as a cadet at the United States Military Academy at West Point is not "military service" under Section 5304(c)(2) of the

---

**4.** This Court's scope of review of the Board's final adjudication is limited to determining whether the adjudication is supported by substantial evidence, whether it accords with the law, or whether constitutional rights were violated. *Miller v. State Employes' Retirement System,* 156 Pa.Cmwlth. 83, 626 A.2d 679 (1993).

Retirement Code because the member's certificate of release or discharge form (DD–214 Form) did not list such service as active service); *Worley v. Pennsylvania Public School Employes' Retirement Board,* 689 A.2d 334 (Pa.Cmwlth.1997), *appeal denied,* 549 Pa. 721, 701 A.2d 580 (1997), *cert. denied,* 523 U.S. 1095, 118 S.Ct. 1562, 140 L.Ed.2d 793 (1998) (the civilian work performed by the conscientious objector in lieu of induction into the armed forces does not constitute creditable non-intervening active military service under Section 8304(b)(2) of the Public School Employes' Retirement Code, *as amended,* 24 Pa.C.S. § 8304(b)(2));[5] *Horner v. Jeffrey,* 823 F.2d 1521 (Fed.Cir.1987) (the time spent as a midshipman at the United States Naval Academy does not constitute "military service" for the purpose of determining the eligibility for the federal civil service retirement benefits).

■ Further, to purchase nonstate service credit for military "service," Burris must establish an employer/employee relationship with the United States. In *Shafer v. State Employes' Retirement Board,* 548 Pa. 320, 696 A.2d 1186 (1997), the Pennsylvania Supreme Court considered the issue of whether the SERS member must establish the existence of an employer/employee relationship with the United States government to purchase nonstate service credit for his service as a Fullbright Scholar teaching at a university in Egypt, under Section 5304(c)(3) of the Retirement Code which permitted the nonstate service credit for "[s]ervice as an administrator, teacher, instructor in the field of education for any agency or department of the government of the United States." The Court held:

> [T]he Retirement Code defines 'State Service' as 'service rendered as a State employee.' 71 Pa.C.S. § 5102. 'School service' is defined as 'service rendered

as a public school employee and credited as service in the Public School Employes' Retirement System.' *Id.* A 'service connected disability' is defined as 'a disability resulting from an injury arising in the course of State employment.' *Id.* Thus, *these provisions of the Retirement Code evidence intent on the part of the General Assembly to equate the term service with an employer/employee relationship.*

*Id.* at 331, 696 A.2d at 1191 (emphasis added).

While authorizing the cooperation and assistance of the Red Cross, 10 U.S.C. § 2602(e) specifically provides that "employees of the American National Red Cross may not be considered as employees of the United States." The Department of Defense Directive 1330.5 § V.C.1 also provides that **"Red Cross** employees assigned to duty with the Armed Forces by the **Red Cross** are employees of the **Red Cross** and may not be considered employees of the United States." Burris also testified at the hearing that she performed her duties at the military hospitals as a civilian employee of the Red Cross, not as an employee of the military; she was under the direct supervision of the Red Cross field director; she was paid by the Red Cross at its salary scales, not by the military; and she did not earn any federal military pension credit or Veterans' Administration benefits for her service at the military hospitals.

Thus, under the federal law and by her own admission, Burris was an employee of the Red Cross, not an employee of the United States government, when she provided the service to the military hospitals on assignment by the Red Cross. Hence, the service provided by Burris cannot be considered military "service" under the Retirement Code.

---

5. The cases interpreting provisions of the Public School Employes' Retirement Code are equally applicable in deciding issues arising under similar or identical provisions of the

Retirement Code. *Estate of Rosenstein v. Public School Employees' Retirement System,* 685 A.2d 624 (Pa.Cmwlth.1996).

Our conclusion is further supported by the amendments made to Section 5304 since the enactment of the Retirement Code in 1974. In 1988, Section 5304(c)(6) was added to allow nonstate service credit for "service in the Cadet Nurse Corps with respect to any period of training as a student or graduate nurse" during the World War II. Subsequently on August 5, 1991, Section 5304(f) was added to temporarily expand "intervening military service" for those who served from August 2, 1990 to August 5, 1991 during the Desert Shield/Desert Storm, as members of "[t]he United States Army Reserve, United States Navy Reserve, United States Marine Corps Reserve, United States Coast Guard Reserve, Unites States Air Force Reserve, Pennsylvania Army National Guard and Pennsylvania Air National Guard."

 Under the principle of *expressio unius est exclusio alterius,* the express mention of a specific matter in a general statute implies the exclusion of others not mentioned. *Pane v. Department of Highways,* 422 Pa. 489, 222 A.2d 913 (1966); *Young v. Workmen's Compensation Appeal Board,* 39 Pa.Cmwlth. 265, 395 A.2d 317 (1978). Although the Legislature expanded creditable nonstate service to include service provided by members of the Reserves and the National Guards during the Desert Shield/Desert Storm and by members of the Cadet Nurse Corps during the World War II, which would not otherwise constitute active military service, it has not done so for the civilian employees of the Red Cross who provided service to the armed forces during the Vietnam War.

Although it may appear unfair to deny nonstate service credit to Burris, who provided valuable service to the military during the Vietnam conflict, "the remedy for such [unfairness] does not lie with this court but with the General Assembly." *Worley,* 689 A.2d at 338. *See also Estate of Rosenstein v. Public School Employees' Retirement System,* 685 A.2d 624 (Pa. Cmwlth.1996) (unequivocal language in the retirement statute may not be altered based on consideration of hardship or equitable principles). Since Burris failed to establish that her service provided as a civilian employee of the Red Cross constitutes non-intervening active military service, she is ineligible to purchase nonstate service credit under Section 5304(c)(2) of the Retirement Code.

Accordingly, the order of the Board is affirmed.

## *O R D E R*

AND NOW, this 3rd day of February, 2000, the order of the State Employees' Retirement Board in the above-captioned matter is affirmed.