69 A.3d 170

Karen E. SNIZASKI and Christine M. Vilsack

v.

PUBLIC SCHOOL EMPLOYEES' RETIREMENT BOARD

**Appeal of Willette Gallman.**

Supreme Court of Pennsylvania.

Argued April 12, 2011.

Decided May 28, 2013.

450

Wendy E. Dunne Smith, Hergenroeder, Rega & Sommer, L.L.C., Pittsburgh, for Willette Gallman.

James Richard Antoniono, Anthony W. DeBernardo Jr., DeBernardo, Antoniono, McCabe, Davis & DeDiana, P.C., Greensburg, for Karen E. Snizaski and Christine M. Vilsack.

Jennifer Ann Mills, PA Public School Employees' Retirement System, for Public School Employees' Retirement Board.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## *OPINION*

Justice McCAFFERY.

The issue before this Court is as follows:

Whether the Commonwealth Court correctly interpreted 24 Pa.C.S. § 8507(e) to require in this case that a Public School Employees' Retirement System nomination of benefits form must have been completed entirely in the hand of the member/decedent in order to effectuate a valid change of beneficiary designation.

*Snizaski v. Public School Employees' Retirement Board,* 606 Pa. 87, 995 A.2d 334 (2010) (*per curiam* ).

We conclude that the Commonwealth Court erred, and hold that the Public School Employees' Retirement Board (the "Board") correctly determined that, under the pertinent findings of fact, Section 8507(e) of the Public School Employees' Retirement Code (the "Code")[1] allows for the distribution of the retirement benefits at issue to Appellant.[2] Accordingly, we vacate the Commonwealth Court's order and remand for consideration of any other issues raised by Appellees to the extent that they have been properly preserved.

On June 11, 2002, Sandra N. Lapcevic ("Decedent") retired at age 57 from her position as a public school teacher employed by the Penn Hills School District. On May 6, 2002, Decedent, who had never married and had no children, submitted an application for retirement (the "first nomination form") to the Public School Employees' Retirement System ("PSERS") in which she designated her mother, Helen Lapcevic, as the primary beneficiary of her pension death benefit

1. *24 Pa.C.S. § 8507(e).*

2. As described more fully below, Section 8507(e) provides generally that members of the public school retirement program may change a previously chosen beneficiary "by written designation," allowing for the new beneficiary to be eligible to receive retirement benefits upon the death of the member. 24 Pa.C.S. § 8507(e).

and two friends, Karen Snizaski and Christine Vilsack, as contingent beneficiaries, who would each receive fifty percent of the death benefit if Helen Lapcevic pre-deceased Decedent.

Slightly more than one month after Decedent's retirement, on July 15, 2002, Helen Lapcevic died. On August 2, 2002, PSERS received a nomination of beneficiary form (the "second nomination form") naming Willette Galman, Appellant herein, as the primary beneficiary of Decedent's death benefit.[3] Portions of the second nomination form had been completed by Appellant, but not Decedent's signature, her social security number, or the date on the form. Hearing Officer's Opinion and Recommendation, dated 3/10/08, at 12, Finding of Fact No. 50, as adopted by the Board's Opinion and Order, dated 6/24/08, at 3. Although Appellant was listed as the sole primary beneficiary, the second nomination form provided that she receive only fifty percent of the funds. Snizaski and Vilsack remained as contingent beneficiaries, with each woman slated to receive twenty-five percent of the death benefit.

PSERS returned the second nomination form to Decedent on October 19, 2002, with a letter explaining that the document could not be processed because it did not distribute one hundred percent of the death benefit payable to each beneficiary class. The letter also stated that if the problem could be rectified without altering the existing information, Decedent could simply insert additional information on the same document; however, in the event that Decedent might seek to modify the existing percentages printed on the document, a blank nomination of beneficiary form was enclosed to serve as a replacement.

---

**3.** Appellant, a former accountant, had met Decedent when, approximately thirty years prior to the administrative hearing in this matter, she began preparing Decedent's income tax returns. Beginning in 2001, after Decedent was diagnosed with Parkinson's disease, Appellant drove Decedent on a daily basis for more than one year, so that Decedent could visit her mother. During that same period of time, and until Decedent was hospitalized in 2004, Appellant helped Decedent with household chores, home renovations, and important paperwork, apparently without receiving any compensation for her services. *See* Hearing Officer's Opinion and Recommendation, dated 3/10/08, at 11, Findings of Fact Nos. 40–41, 43–45, as adopted and modified by the Board's Opinion and Order, dated 6/24/08, at 3.

Appellant altered the second nomination form (at Decedent's direction, according to Appellant's testimony) by first applying a white-out solution to the areas where the death benefit percentages were printed. Hearing Officer's Opinion and Recommendation at 12–13, Findings of Fact Nos. 53–57, as adopted and modified by the Board's Opinion and Order at 3. Appellant then wrote in new percentages indicating that she was to receive one hundred percent of the death benefit as primary beneficiary, and Snizaski and Vilsack each would be entitled to fifty percent of the benefit in their capacity as contingent beneficiaries. Decedent did not re-sign or re-date the document, nor did she initial the changes made by Appellant. Hearing Officer's Opinion and Recommendation at 6, Finding of Fact No. 13, as adopted by the Board's Opinion and Order at 3. The modified second nomination form was then returned to PSERS, which received it on October 29, 2002. *Id.*, Finding of Fact No. 11.

Following receipt of the altered form, PSERS notified Decedent by letter dated December 27, 2002, that the modified second nomination form had been "received and processed." *Id.*, Finding of Fact No. 14. This same letter informed Decedent that if she desired to make any future change to her beneficiary nomination, she must obtain, complete, and forward to PSERS "for processing" a new nomination of beneficiary form. *Id.* at 7, Finding of Fact No. 14. Critically, **Decedent** made no further beneficiary changes after receiving PSERS's letter of December 27, 2002. Board's Opinion and Order at 5, Finding of Fact No. 58.

Decedent's mental and physical condition began to deteriorate in 2004, and she was hospitalized for various physical infirmities. On October 18, 2004, she was adjudicated a totally incapacitated person in the Court of Common Pleas of Allegheny County. The trial court appointed Dianne Spivak, a social worker, to serve as Decedent's permanent plenary guardian. On December 13, 2004, PSERS received a new nomination of beneficiary form (the "third nomination form"), **signed by Spivak,** naming Snizaski, Vilsack, Laura Lapcevic,

and Joseph Lapcevic as the primary beneficiaries of Decedent's death benefit.

Decedent died on February 11, 2006, with more than $688,000 in her PSERS account. When PSERS subsequently concluded that the primary beneficiaries were Snizaski, Vilsack, and the Lapcevics, Appellant requested an administrative hearing with the Board seeking to challenge that determination on the ground that Spivak lacked authority to designate new beneficiaries without approval from the common pleas court. The administrative proceedings were stayed pending resolution of the matter in the common pleas court, which ultimately agreed with Appellant that Spivak lacked authority to change beneficiaries under Section 5536(b) of the Probate, Estates, and Fiduciaries Code, 20 Pa.C.S. § 5536(b).[4] For this reason, the court ruled that the third nomination form submitted by Spivak was a nullity.

Following the common pleas court's ruling, the Board set aside the third nomination form and ordered an administrative hearing to determine how the death benefit should be distributed; that is, should the Board distribute the funds in accordance with the second nomination form, naming Appellant as sole primary beneficiary (the nomination form at issue), or distribute the funds in accordance with the first nomination form. The hearing officer conducted a hearing on September 12, 2007, where evidence was presented regarding, among other things, Appellant's role with respect to the second nomination form and PSERS's guidelines for processing such forms.[5]

Marla Cattermole, the manager of the department that oversees disability and death benefit payments for PSERS, testified that, during the relevant period, PSERS had an internal policy that nomination of beneficiary forms containing

4. This subsection generally addresses issues regarding the court's substituting its judgment for that of an incapacitated person regarding that person's estate matters.

5. No testimony or evidence was introduced regarding what personal connections or precise familial relationships Snizaski, Vilsack, Laura Lapcevic, Joseph Lapcevic, or Spivak had had with Decedent.

information that had been altered using white-out solution were to be rejected unless the changes were initialed by the PSERS member, in order to prevent fraud and to honor only the clear intent of the member. Ms. Cattermole asserted that the altered second nomination form that had been processed by PSERS in December 2002, should have been rejected because the changes had not been initialed by Decedent; however, she could not explain why the usual PSERS procedure was not followed in this case. Nevertheless, she also testified that (1) there was no prohibition against a member receiving assistance from another person to complete a form; and (2) it was her understanding, after reviewing relevant exhibits, that PSERS had accepted the second nomination form naming Appellant as the principal beneficiary of 100% of Decedent's death benefits.

Appellant also testified at the hearing. In addition to testimony regarding her relationship with Decedent, Appellant testified that she was unaware that white-out alterations to the nomination of beneficiary form were prohibited because she did not review the instructions that accompanied the form when it was returned to Decedent in October 2002; Decedent simply produced a bottle of white-out solution and, according to Appellant's testimony, asked Appellant to print new distribution percentages on the second nomination form, and Appellant complied. According to Appellant, Decedent supervised the modifications and then re-took possession of the second nomination form, which Decedent subsequently returned to PSERS.

The hearing officer weighed the testimony and generally found all witnesses to be credible, using their testimony in formulating 57 findings of fact. Among these findings was the specific determination that no evidence was proffered to show that Appellant had perpetrated fraud upon Decedent. Hearing Officer's Opinion and Recommendation at 10, Finding of Fact No. 33, as adopted by the Board's Opinion and Order at 3. The hearing officer concluded that Appellant was entitled to the benefits as the last person designated by Decedent to be the primary beneficiary, further determining that it was of no

moment that the second nomination form had been altered in contravention to PSERS policies. The hearing officer noted that in *Lowing v. Public School Employes' Retirement Board*, 776 A.2d 306 (Pa.Cmwlth.2001), the Commonwealth Court held that PSERS policies that have not been promulgated as regulations do not establish a binding standard of conduct. The hearing officer further noted that PSERS had accepted and processed the second nomination form, notified Decedent of same, and **Decedent** had never thereafter altered her beneficiary designation. Relatedly, the hearing officer found: "Once a form has been processed by PSERS, a copy of the form is then returned to the member." Hearing Officer's Opinion and Recommendation at 10, Finding of Fact No. 38, as adopted by the Board's Opinion and Order at 3. Accordingly, the hearing officer recommended that the entire death benefit be paid to Appellant in accordance with the terms of the second nomination form.

Snizaski and Vilsack filed exceptions, which were denied by the Board. In affirming the hearing officer's recommendation, the Board adopted the hearing officer's findings of fact with a few notable exceptions. First, the Board rejected two findings of fact (Nos. 42 and 51) outright because they relied exclusively on Appellant's testimony as to what Decedent had told her, and modified several other findings of fact (Nos. 43, 54, 55, and 57) only to the extent that they relied upon arguably inadmissible hearsay statements purportedly made by Decedent to Appellant.[6] Second, the Board made an additional formal finding of fact, based on the evidence of record, namely: "Decedent made no further change to her beneficiary nomination after being notified by PSERS that her October 2002 Nomination of Beneficiary form [designating Appellant as sole primary beneficiary] had been accepted. (Official Notice, PSERS' Records)" Board's Opinion and Order at 5, Finding of Fact No. 58.[7] The Board then adopted the

6. Snizaski and Vilsack had objected to statements purportedly made by Decedent on grounds of hearsay and the so-called "Dead Man's Rule," 42 Pa.C.S. § 5930.

7. Although the hearing officer made the same determination, she did not express it as a formal, enumerated finding of fact. *See* Hearing

hearing officer's reasoning that Decedent's death benefit was payable to Appellant. Specifically, the Board reasoned that (1) Decedent had submitted the second nomination form naming Appellant as the sole primary beneficiary; (2) PSERS had accepted that form and notified Decedent that if she wished to make any further changes she could; (3) Decedent never made any subsequent changes to her designation of beneficiary, thus establishing that the second nomination form designating Appellant as the sole, primary beneficiary was the most recently filed, processed, and acknowledged valid nomination of beneficiary form received by PSERS; and (4) there was no evidence of fraud.

Snizaski and Vilsack filed a petition for review in the Commonwealth Court arguing, *inter alia*, that the second nomination form, naming Appellant as the primary beneficiary, did not meet the requirements of 24 Pa.C.S. § 8507(e). Specifically, they asserted that the second nomination form was invalid because the statute provides that a change of beneficiary must be personally made by the participating member, and the second nomination form was completed by Appellant rather than Decedent. The Commonwealth Court agreed, reasoning that "the express terms of Section 8507(e) specifically require a member to change a nomination of beneficiary by some manner of a 'legible representation of letters or numerals upon a material substance.'" *Snizaski v. Public School Employees' Retirement Board*, No. 1329 C.D. 2008, unpublished memorandum opinion at 9 (Pa.Cmwlth., filed May 29, 2009) (quoting 1 Pa.C.S. § 1991). Further, the court observed that a "'retiree's rights'" under the Code "'are so personal that no other person can exercise those rights on behalf of the members.'" *Id.* (quoting *Estate of Rosenstein v. Public School Employees' Retirement System*, 685 A.2d 624, 626 (Pa.Cmwlth.1996)). The court also observed that a retiree must make a designation in writing, a retiree's "mere oral expression" being insufficient. *Id.* at 9–10 (quoting *Estate of Rosenstein, supra* at 626).

Officer's Opinion and Recommendation at 15, Conclusion of Law No. 8; *see also id.* at 28.

The Commonwealth Court then noted that the Board had found that (1) Appellant and not Decedent had applied the whiteout and changed the percentages in the second nomination form; and (2) "[i]n addition," the second nomination form had not been re-executed by Decedent and the changes made to the form had not been initialed by Decedent. *Id.* at 10. For these reasons, the court determined that the second nomination form had not been completed "by the member by written designation" as required by Section 8507(e) of the Code. Accordingly, the Commonwealth Court vacated and remanded with instructions for PSERS to distribute the funds in accordance with the terms of Decedent's first nomination form (in Decedent's application for retirement), thus enabling Snizaski and Vilsack to collect the death benefit as contingent beneficiaries.

We granted Appellant's petition for allowance of appeal to address the sole issue of whether the Commonwealth Court erred in concluding that the second nomination form failed to meet the requirements of 24 Pa.C.S. § 8507(e). *Snizaski,* 995 A.2d at 334. As the subject matter of the appeal presents a question of statutory interpretation, our standard of review is *de novo,* and our scope of review is plenary. *Samuel–Bassett v. Kia Motors America, Inc.,* 613 Pa. 371, 34 A.3d 1, 51 (2011).

Appellant contends that the Commonwealth Court's decision is erroneous because it is contrary to the evidence adduced at the administrative hearing, unsupported by pertinent legal authority, and inconsistent with Section 8507(e), which, she notes, does not state that nomination of beneficiary forms submitted by members of PSERS must be inscribed or corrected in the member's own handwriting or initialed when corrections are made by another at the member's request. With respect to the last point, Appellant argues that the statute merely provides that a member must effectuate a change of beneficiary "by written designation."[8] Because that requirement was satisfied in the case at bar, Appellant

8. Appellant also notes that during the relevant period, a school employee regulation codified at 22 Pa.Code § 215.7(d) provided that a written designation of beneficiary had to be submitted on "a form provided by PSERS." Appellant's Brief at 23. Appellant emphasizes that Decedent

maintains that the Commonwealth Court's determination is contrary to law, including its own previous case law,[9] and impermissibly "legislative." Appellant's Brief at 19, 28–32. Because there is no express requirement that the member must complete or correct the document in her or his own hand, or initial any changes, Appellant argues that the Commonwealth Court usurped the function of the legislature by imposing such requirements here. Appellant also argues that it would be absurd to institute such restrictions, as they would prohibit a member from employing an assistant, typewriter, or word processor to update beneficiary information on retirement forms. In that regard, Appellant notes Ms. Cattermole's testimony that she was unaware of any prohibition against a beneficiary assisting a PSERS member in completing a nomination of beneficiary form. *See* Notes of Testimony Hearing, 9/12/07, at 23–24.

The Board (Respondent before the Commonwealth Court, Appellant being an intervenor in the proceeding before that court) has filed a brief in support of Appellant's position. The Board argues that Appellant should receive the death benefit because the second nomination form clearly establishes that Decedent intended to name Appellant as the sole primary beneficiary, and "the member's intent is the polestar by which to determine the last named beneficiary." Board's Brief at 1. Along these lines, the Board argues that the Commonwealth Court ignored the undisputed evidence that Decedent had signed and dated the second nomination form after Appellant had (incorrectly) filled it out; that Decedent had twice mailed the second nomination form, first in its original state and then as corrected; and that Decedent had received but never acted upon PSERS's acknowledgment and acceptance of the corrected form. Further, the Board contends that Decedent would have received a copy of the processed second nomination form

complied with that additional requirement, which was subsequently eliminated when Section 215.7 was amended in 2008.

9. *See Lowing v. Public School Employees' Retirement Board,* 776 A.2d 306, 308–10 (Pa.Cmwlth.2001) (holding that instructions on a PSERS nomination of beneficiary form are not binding when they are not explicitly required by the Code, duly-promulgated regulations, or interpretive rules that track the meaning of the legislation).

after the corrected copy had been received and approved by PSERS. So far as the Board is concerned, the corrected second nomination form was in a written, tangible form, signed by the member; therefore, it met the requirements of Section 8507 and was thus valid. The Board agrees with Appellant that nothing more is required. Indeed, the Board avers that the Commonwealth Court ruling would place a huge burden upon the Board to examine and confirm that every form it receives was completed by the member. Further, the Board emphasizes the autonomy given to members by the Code to make beneficiary changes, arguing that, ultimately, the determination of the proper disposition of death benefits must be controlled by the member's intent, which was clear in this case: *i.e.*, the evidence is clear that Decedent intended the money to go to Appellant.

On the issue accepted for review, the argument of Appellees (Snizaski and Vilsack) essentially mirrors—and quotes—the analysis of the Commonwealth Court, asserting that Section 8507(e) requires the member to change a nomination of beneficiary form with a "legible representation of letters or numerals." Appellees' Brief at 14. Appellees further contend that Appellant had no right to act on behalf of Decedent in altering the form. Additionally, Appellees contend that because the Board struck or modified all factual findings dependent upon the purported hearsay statements of Decedent, Appellant is bereft of an argument, because her position has always been that she had altered the second nomination form solely at Decedent's verbal direction. Appellees also argue the converse of Appellant's and the Board's contention that Section 8507(e) does not prohibit a member from allowing another individual to fill in areas of the nomination of beneficiary form. They assert: "Nowhere does [Section 8507(e) ] state that the member can authorize someone else to perform the writing." *Id.* at 15.[10]

In accordance with the Statutory Construction Act, our objective is to ascertain and effectuate the intent of the

10. Appellees primarily contend, however, that allowance of appeal was improvidently granted because the Commonwealth Court did not rule

General Assembly. 1 Pa.C.S. § 1921(a); *Pennsylvania Medical Society v. Department of Public Welfare,* 614 Pa. 574, 39 A.3d 267, 283 (2012). The best indication of the General Assembly's intent is the plain language of the statute. *Id.* When the statutory language is "clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). Moreover, in reviewing the statutory text, words must be construed "according to their common and approved usage" unless they have "acquired a peculiar and appropriate meaning." 1 Pa. C.S. § 1903(a). When statutory language is not explicit, legislative intent may be gleaned from a variety of factors, including, *inter alia,* the occasion and necessity for the statute, the mischief to be remedied, the object to be attained, the consequences of a particular interpretation, and the contemporaneous legislative history. 1 Pa.C.S. § 1921(c). Lastly, in ascertaining the legislature's intent, there is a presumption that the General Assembly did not intend a result that is absurd or unreasonable. 1 Pa.C.S. § 1922(1).

The controversy herein centers on the language of Section 8507(e) of the Code, which provides as follows:

> that nomination of beneficiary forms must be completed entirely in the member's own handwriting; rather, they maintain that the Commonwealth Court deemed the second nomination form invalid because Decedent did not re-sign the document or initial the changes after the distribution percentages were "unilaterally altered" by Appellant. Appellees' Brief at 12. Thus, Appellees contend that Appellant and this Court have fundamentally misconstrued the basis of the lower court's decision, and the appeal should be dismissed. We disagree. Fundamentally, this case concerns whether the Commonwealth Court correctly interpreted 24 Pa.C.S. § 8507(e), an interpretation that—as noted by the Board's argument to this Court—could have far-reaching consequences both for the fulfillment of the intentions of retirees and for procedures implemented by the Board. Moreover, we note that the Commonwealth Court based its decision on two factual findings of the Board arguably viewed by the court as independent of one another because of the manner the court set them forth: (1) that Appellant, not Decedent, had made the critical changes to the second nomination form; and (2) "[i]n addition," Decedent failed to re-execute the form or initial the changes. *Snizaski,* No. 1329 C.D. 2008, unpublished memorandum opinion at 10 (emphasis added). For these reasons, we decline to dismiss the appeal as improvidently granted.

> Every member shall nominate a beneficiary by written designation filed with the [Public School Employees' Retirement] board to receive the death benefit or the benefit payable under the provisions of Option 1.[11] Such nomination may be changed at any time by the member by written designation filed with the board. A member may also nominate a contingent beneficiary or beneficiaries to receive the death benefit or the benefit payable under the provisions of Option 1.

24 Pa.C.S. § 8507(e).

The parties fundamentally disagree on the meaning and import of the directive that a nomination of beneficiary must be effectuated "by the member by written designation." Appellant and the Board argue that any typewritten or handwritten document signed and submitted by the member is sufficient, while Appellees assert that no one but the member may "perform the writing" that implements a change of beneficiary. Appellees' Brief at 15. A plain reading of the statute supports the argument of Appellant and the Board. Here, Decedent submitted a nomination of beneficiary form "in writing," designating a change in beneficiary, and it was signed and dated by Decedent. As the Board observes in its brief, the Code "does not ... require the designation to be completed solely in the hand of the member nor does it require corrections by a member to an existing designation [to] be initialed or re-executed." Board's Brief at 1. Further, the corrected second nomination form is not contrary to any regulation or interpretive rule. *See Lowing, supra* at 308–10.

Even if we were to determine that Section 8507(e) is ambiguous regarding the specific issue at hand, secondary methods of divining the intent of the General Assembly are consistent with this plain reading. In prior decisions where this Court has considered the occasion for the statute, the mischief to be

11. Option 1 is defined in the Code as "A life annuity to the member with a guaranteed total payment equal to the present value of the maximum single life annuity on the effective date of retirement with the provision that, if, at his death, he has received less than such present value, the unpaid balance shall be payable to his beneficiary." 24 Pa.C.S. § 8345(a)(1).

remedied, the object to be attained, and the contemporaneous legislative history, we observed that the Code is to be construed liberally in favor of the retiree. *See Kirsch v. Public School Employees' Retirement Board,* 603 Pa. 439, 985 A.2d 671, 676 (2009). Consistently with this mandate, we logically infer that the General Assembly envisioned an application of Section 8507(e) that would facilitate the process of nominating beneficiaries in documents submitted to PSERS. If, as Appellees suggest, the legislature had intended to narrowly circumscribe the modes of written communication available to retirees in this context, far more circumscribed than even PSERS's apparently inconsistently applied internal policies, it would have outlined those restrictions in the statute. The hypertechnical interpretation urged by Appellees is simply unreasonable, as demonstrated by Ms. Cattermole's testimony that PSERS does not categorically reject nomination of beneficiary forms that have not been completed entirely in the member's own handwriting. Absent any evidence of fraud, the process that led to the necessary correction to the second nomination form in this case achieved the clear goal of the statute by allowing the member to make a beneficiary change "by written designation filed with the Board."

Thus, we determine that neither of the bases the Commonwealth Court relied upon for reversing the Board, (to wit, that Decedent did not make the changes to the form in her own hand and that she did not initial the changes made by Appellant) is not founded on a statutory or regulatory mandate.[12] On the contrary, Section 8507(e) as written supports the Board's determination that Decedent had filed with PSERS a valid change of beneficiary "by written designation." As such, Decedent effectuated a contractual obligation on PSERS to pay the death benefit to her nominated beneficiary, Appellant. *See Estate of Rosenstein, supra* at 626. Although the policy of PSERS to require the member to initial changes to an altered nomination of beneficiary form has merit as some

12. Moreover, the Commonwealth Court incorrectly relied on *Estate of Rosenstein, supra* at 626, holding that a retiree's "mere oral expression" of beneficiary nomination is insufficient. *Here, the evidence established that Decedent submitted a written change of beneficiary form.*

means to avoid fraud, it is not required by a regulatory scheme, and its purposes are arguably met in this particular case, as the Board observes, by the fact that (1) PSERS notified Decedent that the second nomination form had been accepted and processed; (2) PSERS procedure directed that Decedent be sent a copy of the accepted form along with such notification; and (3) Decedent never made any subsequent changes, despite having been informed by PSERS that she could do so.

Accordingly, we conclude that the Commonwealth Court erred in disturbing the Board's eminently reasonable determination, which was squarely based on evidence that PSERS received Decedent's written nomination of beneficiary form and that Decedent had made no additional changes after receiving a subsequent letter from PSERS affirming that, based on this form, Decedent had chosen Appellant to be her primary beneficiary. The Board's decision is in accord with Section 8507(e), and it correctly determined that Appellant was the last person nominated by Decedent by written designation to receive her death benefit. Hence, the order of the Commonwealth Court is vacated, and we remand to the Commonwealth Court for consideration of any other issues raised by Appellees, to the extent they have been properly preserved.[13]

Former Justice ORIE MELVIN did not participate in the consideration or decision of this case.

Chief Justice CASTILLE, Justices SAYLOR, EAKIN, BAER, and TODD joined the opinion.

13. The Commonwealth Court's memorandum opinion states that Appellees raised three issues on appeal from the Board's decision, with only the first issue addressing whether Decedent's second nomination form met the requirements of Section 8507(e) of the Code. *Snizaski v. PSERB*, No. 1329 C.D. 2008, unpublished memorandum opinion at 8 (Pa.Cmwlth., filed May 29, 2009). Because the Commonwealth Court based its ruling on its interpretation of Section 8507(e), it specifically did not address the other issues raised by Appellees. *Id.* at 11 n. 15. Nevertheless, Appellees devoted much of their argument to this Court to addressing these ancillary issues. *See* Appellees' Brief at 15–18.