## Commonwealth v. The Bell Telephone Co. of Pennsylvania.

*Philip S. Moyer*, Deputy Attorney-General, for plaintiff.
*Arthur H. Hull*, for defendant.

WICKERSHAM, J., May 5, 1930.—By agreement of counsel this case was submitted to the court without a jury under the provisions of the Act of 1874 [P. L. 109]. The learned Attorney-General and counsel for the defendant have agreed upon a stipulation of facts, which we direct to be filed and to become a part of the record in this case. For convenience we restate briefly the

*Facts.*

It is agreed that The Bell Telephone Company of Pennsylvania, the defendant, was engaged in the telephone business in the State of Pennsylvania during the sixth months' period ending June 30, 1929; that it filed in the office of the Secretary of Revenue of the Commonwealth of Pennsylvania, under the provisions of the Act of May 14, 1925, P. L. 706, its gross receipts report for the six months' period ending June 30, 1929, showing gross receipts within the state from all sources of $34,247,463.20, on which report the Secretary of Revenue made a settlement of gross receipts tax, approved by the Auditor General, on $33,744,571.83, amounting to $269,956.57, from which report and settlement the defendant appealed.

Included within the said report were the items (see paragraph IV of the stipulation of facts):

| | |
|---|---:|
| From removal charges..................................... | $69,634.00 |
| From charges for material furnished and for work done by reporting company's employees; the answer hereto including all receipts from custom work or for installation of reporting company's own equipment or service ........................................... | |
| From other sales of new materials..................... | |
| From sale of old materials............................. | 128,530.84 |
| From rental of wires.................................. | |
| From rental of conduits............................... | |
| From charges for pole rights.......................... | 126,067.40 |
| From directory advertising............................ | 1,253,289.39 |

These items of gross receipts totaling $1,577,521.63 were included by the taxing officers in the said settlement of $33,744,571.83. Defendant objects to the settlement of the taxing officers upon the items above set forth, for the reason that they are not subject to taxation under the provisions of said Act of May 14, 1925, P. L. 706.

The defendant paid into the State Treasury the sum of $257,336.40, being the tax imposed under the provisions of said act of assembly upon the total amount of the items of gross receipts as set forth in said report, amounting to $32,167,050.20, which the defendant admits to be due.

The defendant denies liability for tax on the amount of $1,577,521.63, with the resultant tax of $12,620.17, the said sum being derived from money received by the defendant during the period of time covered by the report from directory advertising, sale of new directories, lease of street address directories, sale of foreign directories and trade-mark service.

The item of $128,530.84, heretofore mentioned and found in paragraph IV of the stipulation of facts, includes receipts upon which no claim for tax is made in the amount of $29,243.36, leaving a balance of receipts in the amount of $99,287.48, upon which the Commonwealth claims a tax and upon which the defendant denies liability for the reasons set forth at length in paragraph VII of the stipulation of facts, to which specific reference will be made in our discussion of this case.

In paragraphs VIII and IX of the agreed stipulation of facts further reference is made to the items in paragraph IV of said stipulation, agreeing that the item "from removal charges, $69,634.00" includes amounts received by the telephone company for moving of subscribers' telephones and rearranging inside wires at the request of subscribers in connection with such subscribers' telephones, which item also covers moving of telephones and rearranging of wires from one location to another on the same premises; and the amount of

receipts referred to in paragraph IV, entitled "from rental of wires, from removal of conduits, from charges for pole rights, $126,067.40," includes items more specifically set forth on page 12 of the stipulation of facts.

The stipulation of facts in paragraph X is as follows:

"The Commonwealth of Pennsylvania claims gross receipts tax upon amount of receipts set forth in paragraph VI, *supra*, to wit, $1,253.289.39; the amount of receipts set forth in paragraph VII, *supra*, to wit, $99,287.58; the amount of receipts set forth in paragraph VIII, *supra*, to wit, $69,634.00; and the amount of receipts set forth in paragraph IX, *supra*, to wit, $126,-067.40, totaling $1,548,278.37, the amount of the tax thereon being $12,286.23, with interest thereon from sixty days from date of the approval of the original settlement made by the Secretary of Revenue, to wit, Aug. 22, 1929, together with Attorney-General's commission and costs, which liability defendant denies."

## Discussion.

This is an appeal by The Bell Telephone Company of Pennsylvania from the settlement made against it by the Secretary of Revenue of the Commonwealth, approved by the Auditor General, for tax on its gross receipts for the six months ending June 30, 1929. This appeal differs somewhat in the facts and the law applied thereto from the former appeal in Commonwealth of Pennsylvania v. The Bell Telephone Company of Pennsylvania, decided by this court March 18, 1929, and reported in 12 D. & C. 617, in which latter case the defendant appealed from the settlement of the Auditor General and State Treasurer made under the provisions of section 23 of the Act of June 1, 1889, P. L. 420, 431, for the six months' period ending June 30, 1923, and in which appeal we were passing upon and interpreting said section. We there decided that a telephone company is liable for tax on gross receipts for the amount derived from directory advertising and for the amount derived from the sale of materials and appliances. From this decision no appeal was taken.

In the instant case, however, we are interpreting section 23 of the Act of 1889, as amended by the Act of May 14, 1925, P. L. 706. We find the Act of 1925, in so far as it relates to the tax to be imposed upon telegraph and telephone companies, differs materially from the Act of 1889, which we will now proceed to demonstrate. Section 23 of the said Act of 1889 provides, *inter alia:*

". . . Every telephone or telegraph company incorporated under the laws of this or any other state or of the United States and doing business in this Commonwealth . . . shall pay to the State Treasurer a tax of 8 mills upon the dollar upon the gross receipts of said corporation, . . . received . . . from telegraph, telephone . . . business done wholly within this state, . . . and for the purpose of ascertaining the amount of the same, it shall be the duty of the treasurer . . . to transmit to the Auditor General a statement . . . of the amount of gross receipts . . . derived from all sources, and of gross receipts from business done wholly within the state during the preceding six months. . . ."

In the instant case, as we have stated, the appeal is from the settlement of the gross receipts tax for the six months ending June 30, 1929, settled as provided in section 23 of the Act of 1889, as amended by the Act of 1925, which reads, *inter alia*, as follows:

"Every telephone or telegraph company incorporated under the laws of this or any other state or of the United States, and doing business in this Commonwealth . . . shall pay to the State Treasurer a tax of 8 mills upon the dollar upon the gross receipts of said corporation . . . received . . . from

telegraph or telephone traffic, or express business done wholly within this state."

It appears, therefore, that, whereas, under section 23 of the Act of 1889 ". . . every telephone . . . company . . . shall pay to the State Treasurer a tax of 8 mills upon the dollar upon the gross receipts of said corporation . . . received . . . from . . . telephone business," under the same section as amended by the Act of 1925, it is provided that ". . . every telephone . . . company . . . shall pay to the State Treasurer a tax of 8 mills upon the dollar upon the gross receipts of said corporation . . . received . . . from . . . telephone traffic."

The question for determination is, therefore, What is meant by the phrase "telephone traffic?" We must inquire and determine what was the intention of the legislature in amending the said section 23. It is the contention of the learned Attorney-General that "telephone traffic" and "telephone business" are synonymous terms, indicating that it was not the intention of the legislature to change the subject-matter of the act. The word "business" occurs on a number of occasions in the amendment just the same as the word is used in section 23 of the Act of 1889, and reference is made to the definition of "traffic" in the dictionaries. "Traffic" is defined in the Century Dictionary to be "interchange of goods, merchandise or property of any kind between countries, communities or individuals; trade; commerce. The coming and going of persons or the transportation of goods along a line of travel as on a road, railway, canal or steamship route. Dealings; intercourse; a piece of business; a transaction. To deal; to have business dealings."

It mut be conceded that taking the definition of "traffic" in its broadest and most comprehensive sense lends some support to the contention of the Attorney-General. However, applying the rule of reason and the well known canons of interpretation of statutes, we think this contention cannot prevail. We cannot think that the legislature intended to do a vain thing if "traffic" and "business" are to be construed as synonymous; and if the legislature did not intend to limit and remove certain items from taxation, then why did it amend section 23 of the Act of 1889? If the Commonwealth now has the power to levy a tax on the gross receipts for the amount derived from directory advertising and from the sale of materials and appliances, then the legislature, in amending section 23 of the act now imposing a tax of 8 mills on the gross receipts of the defendant corporation for telephone traffic and not for telephone business, did a vain thing. This is unthinkable.

"An amendment of a statute so as 'to read as follows,' etc., repeals the latter as to all matters wherein the two differ, and as to everything else merges the old law in the new, leaving the old no vitality distinct from the new, continuing the former as to past transactions, but as to future ones resting the whole force of the legislation upon the amendatory statute. . . . Of course, where a statute is passed upon a subject already legislated upon, it cannot be proper to suppose that nothing new was intended, because that would treat the enactment as a work of supererogation, which the legislature, knowing the existing law, Howard Association's Appeal, 70 Pa. 344, 346, cannot be assumed to have designed it to be: Pardee's Appeal [100 Pa. 408]:" Brown v. Title and Trust Co., 174 Pa. 443, 459.

The intention of the legislature, when discovered, must prevail, any rule of construction declared by previous acts to the contrary notwithstanding: Brown v. Barry, 3 Dallas, 365, 367. A departure from the words of a prior statute upon the same subject is an intimation that another and not the same meaning is intended to be given to the new enactment: Rich v. Keyser,

54 Pa. 86; Brown v. Title and Trust Co., *supra*. The words of a statute, when unambiguous, are the true guide to the legislature's will; that they differ from the words of a prior statute on the same subject is an intimation that they are to have a different construction: Rich v. Keyser, *supra*. It is an old rule of construction that if one interpretation would lead to absurdity, the other not, we must adopt the latter; so that interpretation which leads to the more complete effect, which the legislature had in view, is preferable to another: City of Philadelphia v. Ridge Avenue Ry. Co., 102 Pa. 190, 197.

Inasmuch as the Act of 1925 changed the subject of taxation from "telephone business," as used in the Act of 1889, to "telephone traffic," only one conclusion can be reached, namely, that the same meaning was not intended to be given to "telephone traffic" as to "telephone business." Where it appears from the language of an act that a certain word or phrase therein was not intended to operate in its broadest sense, it will be restricted so as to accord with the intention: Holman's Appeal, 106 Pa. 502. In this case it was held that the Act of April 22, 1856, P. L. 532, requiring judgments, recognizances, *sci. fas.* and executions to be entered in "a book to be called the judgment index," in order to constitute a lien, does not apply to recognizances in partition in the Orphans' Court, nor does it require any index in the nature of a judgment index to be kept in the offices of the Orphans' Court.

In Clohessy v. Roedelheim, Bing & Co., 99 Pa. 56, it was held that the Act of March 29, 1860 [P. L. 346], which provides that in all actions for the sale of any spirituous, vinous or malt liquors the fact that such liquors or admixtures thereof were impure, vitiated or adulterated shall constitute a good and sufficient defense, applies only in those cases where the quality or value of such liquors has been impaired by the impurity, vitiation or adulteration. See opinion of Mr. Justice Sterrett, page 61, in which he says:

". . . The act was not intended to prevent every admixture of liquors, for by its very terms 'admixtures thereof' are recognized. The penalty of the act is aimed at such impurity, vitiation or adulteration of liquors or admixtures thereof as impairs either their quality or value. This, of course, forbids the introduction of all poisonous or noxious ingredients, because these necessarily impair the quality, if not also the value, of the liquor.

See, also, Appeal of Fox et ux., 112 Pa. 337, and Keath v. Shiffer, 25 Lanc. Law Rev. 253, 254.

An analysis of the amended section 23 clearly demonstrates, in our opinion, what the legislature had in mind when section 23 of the Act of 1889 was amended by the Act of 1925. We will now proceed to analyze section 23, as amended by the Act of 1925.

The word "traffic" is used in the act in connection with the taxable receipts of railroads. The taxable receipts of railroads are those "received from passengers and freight traffic," which receipts generally are by no means limited to receipts from "passenger and freight traffic," for revenue is derived in a variety of ways, such as tolls, rental of restaurants, news-stands, barber shops, etc., but the taxable receipts are limited to receipts from "passengers and freight traffic." The receipts from "freight traffic," it must be admitted, are receipts from the transportation of freight, and, by comparison, the use of the word "traffic" in the Act of 1925, relating to telephone and telegraph companies, indicates that it is used in a cognate connection; that is to say, transportation of messages.

In a comparison of the Acts of 1889 and 1925, relating to electric light companies, we find that in the Act of 1889 it is provided:

". . . and every electric light company . . . shall pay . . . a tax of 8 mills upon the dollar upon the gross receipts of said corporation . . . received . . . from business of electric light companies."

In the Act of 1925, however, the language has changed so as to read:

". . . and every electric light company, water power company, and hydro-electric company, . . . shall pay . . . a tax of 8 mills upon the dollar upon the gross receipts . . . from the sale of electricity."

"Business," as contained in the Act of 1889, was defined in Com. *v.* Brush Electric Light Co., 204 Pa. 249, 252, as applied to electric light companies, to be:

". . . The tax is not to be paid upon the gross receipts from electric lighting, but from the gross receipts from the business of the company. . . . It is taxed on what it does. The statute imposes the tax not upon a portion of its receipts—those derived from a particular commodity it supplies to the public—but upon all of its receipts from its general business conducted under its franchises."

It is very significant, therefore, that the legislature having used and the courts having defined "receipts . . . from the business of electric light companies," as used in section 23 of the Act of 1889, the legislature in 1925 deliberately gives up this long used expression and limits the receipts upon which the tax shall be paid to the receipts "from the sale of electricity." It cannot be contended that the expression "receipts from the sale of electricity" includes receipts from the sale of fixtures, junk, etc. The legislature having deliberately given up the long used words "receipts . . . from the business of electric light companies," we think the clearly defined idea for which it stood must go, unless it is otherwise plainly seen to be retained: Com. *v.* Railroad Co., 145 Pa. 200, 205.

Applying the reasoning in the case of Com. *v.* Railroad Co., *supra*, to the effect of the Act of 1925 as affecting electric light companies, it is apparent that when the legislature changed the expression "receipts from business of electric light companies" to "receipts . . . from the sale of electricity," the meaning of business as used in the Act of 1889 and as defined in the case of Com. *v.* Brush Electric Light Co., *supra*, must go; and since the definition of the word "business," as stated in the case of Com. *v.* Brush Electric Light Co., was adopted by this court and controlled the definition of "business" as applied to telephone companies, the meaning, so far as affecting taxable gross receipts of telephone companies, must go, since the Act of 1925 omitted the word "business" and substituted the word "traffic."

It follows, therefore, that in the Act of 1925, by limiting the taxable gross receipts of telephone companies to receipts from the transmission of messages, and by limiting the taxable receipts of electric light companies, water power companies and hydro-electric companies to receipts from the sale of electricity, the legislature has made uniform the taxable gross receipts and eliminated the receipts which discriminated against electric light, water power, hydro-electric and telegraph and telephone companies.

Applying the law as we have found it to be to the agreed stipulation of facts, we find:

*(a)* Receipts from directory advertising are not now taxable for gross receipts under the Act of 1925.

*(b)* The receipts from the lease of street address directories, sale of foreign directories and trade-mark service are not taxable because not accruing to the company from the transmission by it of messages.

See paragraph VI, *(a) (b), (c), (d), (e),* of stipulation of facts.

Paragraph VII of the stipulation of facts, sections numbered respectively from 1 to 10, inclusive, explains the classification of receipts upon which the Commonwealth claims tax included under the heading "From charges for material furnished and for work done by reporting company's employees, etc., . . . $128,530.84," as set forth in the second item of paragraph IV of the stipulation. The Commonwealth makes no claim upon certain of these receipts totaling $29,243.36, but none of these items are included in sections 1 to 10 of paragraph VII of the stipulation. The classification of these receipts follows substantially the classification followed in the former case. No receipts from the transmission of messages are included in any of these classifications. We think the item set forth in the several sections of paragraph VII of the stipulations are not subject to gross receipts tax.

Paragraph VIII of the stipulation of facts represents receipts "from removal charges." These amounts are received by the telephone company for moving subscribers' telephones and rearranging inside wires at the request of subscribers in connection with their telephones. We think none of these receipts are for the transmission of messages, and they are not, therefore, telephone traffic, and are not taxable.

Paragraph IX represents receipts "from rental of wires, from rental of conduits and from charges for pole rights." Under the item "from rental for wires" are included amounts received by the telephone company for lines and equipment forming part of its exchange plant leased to others for use as private lines without exchange connections with other subscribers. The defendant company leases the equipment but does not render exchange service. We think the sums derived for this service, amounting to $66,025.61, are taxable.

In section 2 of paragraph IX the receipts of the company, amounting to $60,041.79, are derived from rental of conduits and charges for pole rights. The defendant company rents space in its tubes or conduits. It has nothing whatever to do with the use that the lessee company makes of the space, and is no different from the rent that the defendant company might receive if it rented a room in one of its buildings. The same is true of "charges for pole rights." The company simply leases to another company the right to attach to its poles; it has nothing to do with the use that the lessee company makes of the exercise of the right, and is no different from leasing a room in a building.

We are of the opinion, therefore, that the items mentioned in paragraph IV of the stipulation of facts are exempt from the gross receipts tax imposed by section 23 of the Act of 1889, as amended by the Act of 1925, with the following exception:

We think the items mentioned in section 1 of paragraph IX of the agreed stipulation of facts, the same being the amount of receipts "from rental of wires, from rental of conduits, from charges for pole rights, $126,067.40," which includes an item of rental of wires, including amounts received by the telephone company for lines and equipment forming part of its exchange plant, leased to others, for use as private lines, without exchange connections with other subscribers, which includes wires, receivers, transmitters, etc., amounting to $66,025.61, is taxable.

## Conclusions of law.

1. The item in paragraph IV of the stipulation of facts being receipts from removal charges, amounting to $69,634, is not taxable for gross receipts, authorized by section 23 of the Act of 1889, as amended by the Act of May 14, 1925, P. L. 706.

682

2. The item in paragraph IV, entitled "receipts from charges for material furnished and for work done by reporting company's employees, including all receipts from custom work or for installation of reporting company's own equipment or service," including sale of new materials and sale of old materials, amounting to $128,530.84, is not taxable for gross receipts under said act.

3. The item in paragraph IV of the agreed stipulation of facts for receipts from the rental of wires, amounting to $66,025.61, is taxable for gross receipts, as authorized by the said act.

4. The amount derived from receipts for the rental of conduits and charges for pole rights, amounting to $60,041.79, is not taxable.

5. The receipts of the telephone company received from directory advertising, amounting to $1,253,289.39, are not taxable for gross receipts, as authorized by the said act.

6. The costs of these proceedings are to be paid by the defendant.

### Tax.

Amount of tax, 8 mills on $66,025.61 ............ $528.20
Interest at 6 per cent. from Oct. 21, 1929, being sixty days after date of final settlement, to May 5, 1930 ....................................... 17.08
———————— $545.28
Attorney-General's commission of 5 per cent ............. 27.26

Total ........................................ $572.54

### Judgment.

And now, May 5, 1930, judgment is hereby directed to be entered in favor of the Commonwealth and against The Bell Telephone Company of Pennsylvania in the sum of $572.54, unless exceptions be filed within the time limited by law.

From Homer L. Kreider, Harrisburg, Pa.