## Commonwealth *v.* The Bell Telephone Company of Pennsylvania, Appellant.

Argued September 29, 1943. Before MAXEY, C. J., LINN, STERN, PATTERSON and STEARNE, JJ.

*Arthur H. Hull,* of *Hull, Leiby & Metzger,* for appellant.

*Carl F. Chronister,* Special Deputy Attorney General, with him *B. B. Bastian,* Deputy Attorney General, and *James H. Duff,* Attorney General, for appellee.

OPINION BY MR. JUSTICE HORACE STERN, November 22, 1943:

The Act of June 1, 1889, P. L. 420, as amended by the Act of May 29, 1941, P. L. 72, imposed a tax on telephone companies for the six months' period ending June 30, 1941, of twenty mills on the dollar of the gross receipts from "telephone messages transmitted wholly within the State". The Bell Telephone Company of Pennsylvania paid, for that period, a tax of $723,744.16 on gross receipts fixed at $36,187,207.86, but subsequently it sought a resettlement, and, that being refused, appealed to the Dauphin County court, which held that a part of the tax had been improperly imposed and entered judgment in the Company's favor for $9,556.87. Being still dissatisfied, the Company now appeals to this court. It claims that there are three items, or sets of items, included in its receipts which also should have been declared exempt, namely, (1) charges for use of code calling systems and signal apparatus, amounting to $35,-

450.83; (2) charges for use of certain supplemental or special equipment, amounting to $732,379.57, and (3) charges for use of auxiliary lines, amounting to $94,-232.29.

(1) Code calling systems and signal apparatus consist of devices located at various points in the subscriber's premises, the function of which is to advise persons working there of incoming calls for them at times when they are away from their regular stations and telephone instruments. Thus, when a call is received at the subscriber's branch exchange, and the operator finds that the person called is not at his telephone, the operator presses a key in the code calling equipment and thereby a signal is sounded on all the bells or flashed throughout the premises, the particular code signal indicating the individual for whom the call is intended. It would seem clear that the charges made by the Company for the use of such equipment are taxable as being received from the transmission of telephone messages. One of the requisites of such transmission is the giving of a signal to the person who is to receive the message that there is a call for him and he should therefore station himself at the telephone; unless he is thus notified, the telephone conversation—the transmission of the message—cannot take place. The charge for the use of the standard equipment, including the bell, buzzer or light which gives notice of an incoming call, being admittedly a taxable receipt from the transmission of the messages, the extra charge for the extension of the signalling apparatus to a point where it better serves the purpose of summoning the person who is to receive the message, is equally taxable.

(2) The second set of items in question consists of charges for the use of certain articles of special equipment which may be briefly described as follows: (a) Additional receivers. These are supplementary to the standard equipment and permit an additional person or persons to hear the message transmitted. (b) Amplified

receiving equipment. This consists of an attachment for amplifying the telephone conversation and is for the use of persons with impaired hearing. (c) Chest transmitter sets. These, intended for use by switchboard operators, are attached to the chest in such a way as to hold the transmitter in front of the operator's mouth and leave both hands free for operating the switchboard. (d) Coin boxes. These are devices placed on extension stations in cases where the subscriber does not desire the public to use his main telephone. (e) Extension bells. These are additional to the one furnished in the regular installation, and are designed, either by reason of their loudness or location, to be more audible to the subscriber. (f) Extension stations. These are additional or extension telephones furnished in metered areas. (g) Foot transmitter cut-out switches. These are devices which permit the subscriber to cut out the transmitter temporarily and thereby eliminate surrounding noises. (h) Iron box telephone sets. These are designed to protect telephone instruments located outside of the building. (i) Secretarial system. This provides a switchboard arrangement for "secretarial" service, whereby the attendant at such a board is able, for example, to accept a call intended for a doctor who is not then in his office and later report the message to him. (j) Telephone brackets. These are swinging and extension holders for telephone instruments. (k) Toll terminals. These consist of equipment connecting subscribers directly to the telephone toll-board for long-distance calls. (l) Wiring plans. These comprise switches, keys and other special equipment to enable the subscriber to handle telephone messages at his end of the line in ways not possible with the ordinary telephone set; for example, by permitting a call over either of two separate telephone installations to be answered by picking up the receiver on the other line, or permitting an extension station to be cut off if the subscriber wishes the conversation to be heard only on his own telephone. (m) Private branch exchange trunk

lines. These are additional trunk lines between the subscriber's branch exchange and the Company's central office, the charges for their use arising only where measured or metered service is in effect. ·

All of the attachments thus described represent apparatus not furnished by the Company as part of its regular installation, and for the use of which extra charges are accordingly made. The Company concedes that charges for the use of its standard equipment are taxable receipts, since such charges are either identical with, or included in, those made for transmitting the messages by means of such equipment. It insists, however, that, as the additional equipment is not essential for the transmission of messages, the revenue received as a charge for its use should not be considered as being derived from transmission. This argument overlooks the fact that any device or apparatus which renders the transmission more effective, even though it may not be absolutely needed, is a component part of the transmitting instrumentality; if the Company's argument were valid, it would apply with equal force to dialing equipment, "French" phones and many other improvements and gadgets, indeed to all telephone equipment other than that used in the first years of telephonic communication. The payments which the subscriber makes to the Company, whether for the use of standard or additional apparatus, are all made by him for the transmission of telephone messages, that being the sole purpose of his subscription.

A charge exacted from a passenger riding in a Pullman car, additional to that made for transportation in the ordinary coach, was held, in *Pullman's Palace Car Co. v. Commonwealth*, 107 Pa. 148, to be taxable as being received "for transportation". If the revenue derived from a passenger for the use of more comfortable facilities in travelling is thus regarded as being a part of the charge for transportation, it would seem reasonable to hold, by analogy, that revenue derived from a telephone

subscriber for the use of facilities making telephone communication more satisfactory must be regarded as being a part of the charge for transmission of the messages.

(3) The auxiliary line service, the receipts from which are claimed to be non-taxable, consists in furnishing the subscriber with an extra line or lines from the Company's central office, thereby permitting him to place more than one call at a time, and also preventing his telephone from being "busy" to incoming calls. The Company points out that messages over the auxiliary lines are charged only to the first line, and therefore contends that the charge for auxiliary lines is for the additional facilities and not for the transmission of messages. This method of bookkeeping, however otherwise proper, cannot disguise the fact that the sole function of the auxiliary lines is to transmit messages in the same manner as the main line, and consequently they cannot be differently regarded. Viewed from a realistic standpoint the charges for *all* the lines are revenues obtained from the transmission of telephone messages and therefore constitute taxable receipts under the statute.

Judgment affirmed.