**VERIZON PENNSYLVANIA, INC., Petitioner**

v.

**COMMONWEALTH of Pennsylvania, Respondent.**

Commonwealth Court of Pennsylvania.

Argued May 15, 2013.
Decided July 5, 2013.

R. Gregory Roberts and Craig B. Fields, NY, Jeffrey S. Stokes, Harrisburg, for petitioner.

Jonathan C. Edmunds, Deputy Attorney General, Harrisburg, for respondent.

BEFORE: PELLEGRINI, President Judge, and McGINLEY, Judge, and COHN JUBELIRER, Judge, and SIMPSON, Judge, and LEAVITT, Judge, and BROBSON, Judge, and McCULLOUGH, Judge.

OPINION BY Judge McCULLOUGH.

Verizon Pennsylvania, Inc. (Verizon) petitions for review of the February 26, 2008 order of the Board of Finance and Revenue (Board) denying Verizon's tax resettlement petition to reduce the amount of taxable gross receipts for the 2004 tax year under section 1101(a)(2) of the Tax Reform Code of 1971.[1]

*Background and Procedural History*

Verizon timely filed its Tax Report for the tax year ending December 31, 2004, reporting taxable intrastate gross receipts of $1,474,524,745 and a paid tax of $73,726,237. The Department of Revenue issued a settlement against Verizon, with the approval of the Department of the Auditor General, that increased Verizon's taxable gross receipts by $953,151,788, raising the total to $2,427,676,533,[2] and asserted a tax deficiency of $47,657,580. Verizon filed a resettlement petition with the Board of Appeals (BOA). The BOA reduced Verizon's taxable gross receipts by $754,451,363, lowering the total to $1,673,225,170,[3] and reduced the asserted

---

1. Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. § 8101(a)(2).

2. The parties' Stipulation of Facts I incorrectly stated the total as $2,427,676,531.

3. The parties' Stipulation of Facts I incorrectly stated the total as $1,673,225,168.

tax deficiency to $9,935,021. (Stipulation of Facts I, Nos. 6–11).[4]

Verizon filed a petition for review of the BOA resettlement with the Board. The Board denied Verizon's petition for review in its entirety. (Stipulation of Facts I, Nos. 13, 14). In its order, the Board explained that Verizon, doing business within the Commonwealth as a provider of mobile telecommunications services, had an obligation to pay tax on all receipts from telephone messages transmitted. The Board determined that Verizon failed to provide proof of the amounts claimed as allowable deductions to compute taxable gross receipts, as well as total gross receipts for the 2004 tax year. In the absence of sufficient evidence to determine the amounts of the claimed deductions, the Board concluded that Verizon was not entitled to an adjustment of the settled tax. (Board's order at 2, 3.)

## Discussion

■ On appeal,[5] Verizon argues that receipts from the provision of (1) private telephone lines; (2) directory assistance services; and (3) non-recurring service charges, including telephone line installation, moves of or changes to telephone lines and service, and repairs of telephone lines, are not taxable. We affirm with regard to the private telephone lines and directory assistance services and reverse with respect to the non-recurring service charges.

*Bell I*

The Legislature first applied the gross receipts tax to telephone companies in section 23 of the Act of June 1, 1889, P.L. 420 (the 1889 Act), 72 P.S. § 2181.[6] Section 23 of the 1889 Act applied to gross receipts "received ... from telegraph, telephone or express business done wholly within this State...." *Id.*

The Dauphin County Court of Common Pleas analyzed the scope of the 1889 Act in *Commonwealth v. Bell Telephone Company,* 12 Pa. D. & C. 617 (1929) *(Bell I )*. In *Bell I,* The Bell Telephone Company of Philadelphia (Bell) challenged the inclusion of gross receipts received from directory advertising and charges for materials furnished and work done by Bell's employees, including charges from: (i) installing standard telephone materials in excess of the materials needed for standard installations; (ii) the time and expense of Bell's employees installing the excess materials; and (iii) repairing and rearranging equipment owned by Bell and others such as wires, cables, poles, brackets, insulators, and batteries, in calculating the gross receipts tax. The court in *Bell I* concluded that the receipts from all of the sources challenged by Bell were taxable under the broad scope of the "telephone business" language in the 1889 Act. In this regard, the court stated that "[t]he statute does not restrict the taxation to receipts from the transmission of telephone messages, but expressly taxes telephone business de-

4. Before this Court, Verizon and the Commonwealth stipulated to the facts underlying this appeal.

5. Our scope of review in appeals from decisions of the Board is *de novo* because the appellate court functions as a trial court, even though such cases are heard in our appellate jurisdiction. *Hvizdak v. Commonwealth,* 50 A.3d 788, 791 n. 3 (Pa.Cmwlth.2012), affirmed, ── Pa. ──, 69 A.3d 170 (2013).

Questions raised by the petition for review are determined by the record created before the appellate court or on the parties' stipulation of facts. *Id.* That stipulation is binding and conclusive on the appellate court, but the appellate court may draw its own legal conclusions from those facts. *Id.*

6. Repealed by section 1103 of the Act of March 4, 1971, P.L. 102, 72 P.S. § 8103.

rived from the complete business of the corporation." 12 Pa. D. & C. at 623–24.

### Bell II

The 1889 Act was amended by the Legislature with the Act of May 14, 1925, P.L. 706, *as amended,* 72 P.S. § 2181. This amendment modified the language of section 23 of the 1889 Act to apply the gross receipts tax to gross receipts "received . . . from telegraph or telephone, *traffic* or express business *done wholly within this State....*" *Id.* (emphasis added). Here, the change was to include in the gross receipts tax any receipts derived from "traffic."

The Dauphin County Common Pleas Court construed this language in *Commonwealth v. The Bell Telephone Company of Pennsylvania,* 14 Pa. D. & C. 675 (1930) *(Bell II ).* In *Bell II,* Bell alleged that the gross receipts tax should not include the following: removal charges; charges for materials furnished and for work done by Bell's employees, including all receipts from custom work or for installation of Bell's own equipment or service; sale of new and old materials; rental of wires; rental of conduits and charges for pole rights; and charges for directory advertising. *Id.* at 681–82. The court in *Bell II* determined that the amended language had a different meaning than the language in the 1889 Act, stating "[w]e cannot think that the legislature intended to do a vain thing if 'traffic' and 'business' are to be construed as synonymous." *Id.* at 678. The court stated that amended language of a statute on the same subject signals that a new meaning is to be given to the enactment. *Id.*

The court then compared the 1889 Act with the amended language in the 1925 statute as they related to electric light companies. In 1889, the gross receipts tax included the "business of electric light companies." However, in 1925, the Legislature amended the statutory language to only include the "sale of electricity" in the gross receipts tax. The court noted that in *Commonwealth v. Brush Electric Light Company,* 204 Pa. 249, 53 A. 1096 (1903), our Supreme Court had previously adopted the definition of "business" in the electric lighting context as dealing with gross receipts from the entire purpose of the company, and not just gross receipts from electric lighting. The court concluded that the term "business" had the same meaning when applied to telephone companies and that the Legislature's substitution of the word "traffic" for "business" signified that "traffic" should be construed in a different manner than the broad definition associated with "business." *Bell II,* 14 Pa. D. & C. at 679–80.

Further, the court analogized the concept of telephone traffic to that of railroad traffic, referenced in the same act; the taxable gross receipts for railroads included gross receipts "received from passengers and freight traffic." However, the court noted that railroads derived receipts from more sources than passengers and freight, including tolls, rental of restaurants, newsstands, and barber shops. Based on the limiting statutory language, the court concluded that receipts from "freight traffic" are receipts from the transportation of freight. Thus, the court construed the statutory language "telephone traffic" to mean the "transportation" or "transmission" of messages. *Id.*

Considering the narrower definition of traffic, the court concluded that receipts from the following are not subject to the gross receipts tax because they are not. derived from the transmission of messages: directory advertising; the lease of street address directories; the sale of foreign directories; trademark services; materials furnished; work done by Bell's em-

ployees that included custom work and installation of Bell's own equipment or service; sale of new and old materials; removal charges that included moving subscribers' telephones and rearranging inside wires at the subscribers' requests; the rental of conduits; and charges for pole rights. However, the court further concluded that receipts from the rental of wires, including "amounts received by [Bell] for lines and equipment forming part of its exchange plant, leased to others, for use as private lines, without exchange connections to other subscribers, which includes wires, receivers, transmitters, etc.," are taxable because Bell leased the equipment but did not engage in exchange service. *Id.* at 681.

### Bell III

The Legislature again amended the 1889 Act with the Act of April 25, 1929, P.L. 662, *as amended,* 72 P.S. § 2181. This amendment modified section 23 to include within the category of receipts subject to the gross receipts tax any gross receipts "received ... from telegraph or telephone *messages transmitted* wholly within the State...." *Id.* (emphasis added). Here, the change was to delete the term "traffic" and include in the gross receipts tax any receipts from telephone "messages transmitted."

Our Supreme Court considered this language in *Commonwealth v. Bell Telephone Company of Pennsylvania,* 348 Pa. 161, 34 A.2d 531 (1943) (*Bell III*). In *Bell III,* Bell challenged the taxability of the following three categories of receipts: (1) charges for the use of code calling systems and signal apparatus; (2) charges for the use of certain supplemental or special equipment; and (3) charges for the use of auxiliary lines. 348 Pa. at 162–63, 34 A.2d at 532. Bell argued that messages over the auxiliary lines were charged to the first line, making the charge for the auxil-

iary lines a charge for an additional facility and not for a transmission of messages. *Id.* at 166, 34 A.2d at 532.

Code calling systems and signal apparatus were located throughout a subscriber's premises, having the purpose of advising persons within the premises of an incoming call when they were away from their telephone. When a call was received by the subscriber's operator and the recipient of the call was away from the telephone, the operator pressed a key in the code calling system and a signal was sounded on all the bells or flashed throughout the premises. Each individual on the premises had a particular code signal. *Id.* at 163, 34 A.2d at 532. The supplemental or special equipment included additional receivers, amplified receivers for the hearing impaired, hands-free transmitters for operators, coin boxes, extension bells and stations, cut-out switches, iron box sets, switchboard message services, telephone brackets, toll terminals, wiring plans, and private branch exchange trunk lines. *Id.* at 163–65, 34 A.2d at 532–33. Auxiliary lines were extra lines provided to the subscriber to allow the subscriber to place more than one call at a time and prevented the subscriber's telephone from becoming "busy" to incoming calls. *Id.* at 166, 34 A.2d at 533. The Supreme Court concluded that each category was taxable under the 1929 statute.

The Supreme Court found that the charges related to code calling systems and signal apparatus were "taxable as being received from the transmission of telephone messages." *Id.* at 163, 34 A.2d at 532. The Supreme Court explained that, without the use of the systems to notify the recipient of the call, "the telephone conversation—the transmission of the message—cannot take place." *Id.*

The Supreme Court also found that the gross receipts tax applied to the charges for supplemental and special equipment, because "any device or apparatus which renders the transmission more *effective*, even though it may not be absolutely needed, is a component part of the transmitting instrumentality" and "revenue derived from a telephone subscriber for the use of facilities making telephone communication more *satisfactory* must be regarded as being a part of the charge for transmission of the messages." *Id.* at 165–66, 34 A.2d at 533 (emphasis added). Similarly, the court in *Bell II* found that wires, receivers, and transmitters leased to customers for private lines were taxable. *Bell II*, 14 Pa. D. & C. at 681. The Supreme Court noted that "[t]he payments which the subscriber makes to [Bell], whether for the use of standard or additional apparatus, are all made by him for the transmission of telephone messages, that being the sole purpose of his subscription." *Bell III*, 348 Pa. at 165, 34 A.2d at 533.

The Supreme Court analogized the supplemental and special equipment at issue in *Bell III* to the Pullman car at issue in *Pullman's Palace Car Co. v. Commonwealth*, 107 Pa. 148 (1884), involving an additional charge placed on a passenger riding in a Pullman car instead of an ordinary coach. The more comfortable car was considered " 'for transportation,' " and, thus, taxable. *Bell III*, 348 Pa. at 165, 34 A.2d at 533 (internal citation omitted). The court in *Bell III* concluded that, similarly, any revenue derived from a telephone subscriber's payment for supplemental or special equipment that makes communication more satisfactory is subject to the gross receipts tax as a charge for "transmission of the messages." *Id.* at 165–66, 34 A.2d at 533.

The Supreme Court determined that auxiliary line service was taxable, because

the extra lines were used solely for the transmission of messages, regardless of whether Bell charged subscribers for the auxiliary lines separately or in conjunction with the first line. *Id.*

### Tax Reform Code of 1971

Today, the act governing the gross receipts tax for telephone companies is found at section 1101 of the Tax Reform Code of 1971 (Code), *as amended*, 72 P.S. § 8101. Section 1101(a)(2) of the Code currently imposes a gross receipts tax on telephone companies doing business within the Commonwealth for every dollar of the gross receipts received from:

(2) telegraph or *telephone messages transmitted* wholly within this State and telegraph or telephone messages transmitted in interstate commerce where such messages originate or terminate in this State and the charges for such messages are billed to a service address in this State, except gross receipts derived from:

(i) The sales of access to the Internet, as set forth in Article II, made to the ultimate consumer; and

(ii) The sales for resale to persons, partnerships, associations, corporations or political subdivisions subject to the tax imposed by this article upon gross receipts derived from such resale of telecommunications services, including:

(A) Telecommunications exchange access to interconnect with a local exchange carrier's network;

(B) Network elements on an unbundled basis; and

(C) Sales of telecommunications services to interconnect with providers of mobile telecommunications services . . . .

72 P.S. § 8101(a)(2) (emphasis added).

Similar to the 1929 amendment to the 1889 Act, section 1101(a)(2) of the Code

imposes a gross receipts tax upon receipts from "telegraph or telephone messages transmitted wholly within this State." However, section 1101(a)(2) broadens the scope of the taxable receipts to also include receipts from "telegraph or telephone messages transmitted *in interstate commerce.*" 72 P.S. § 8101(a)(2) (emphasis added).

A statute that imposes a tax must be strictly construed and any ambiguity in the statute must be resolved in favor of the taxpayer. 1 Pa.C.S. § 1928 (strict construction applies to statutes imposing taxes); *Commonwealth v. Willson Products,* 412 Pa. 78, 83, 194 A.2d 162, 165 (1963) ("[E]very tax statute must be construed most strongly and strictly against the Government and if there be a *reasonable* doubt as to its construction or its application to a particular case, that doubt must be resolved in favor of the taxpayer.") However, "when a court of last resort has construed the language used in a statute, the General Assembly in subsequent statutes on the same subject matter intends the same construction to be placed upon such language." 1 Pa.C.S. § 1922(4); *Willson Products,* 412 Pa. at 87, 194 A.2d at 167 ("The failure of the Legislature ... to change the law as therein interpreted by this Court creates a presumption that such an interpretation was in accordance with the intent of the Legislature; otherwise it would have changed the law in a subsequent amendment.").

## Analysis

### Private Telephone Line Receipts

■ Verizon customers may lease a private telephone line between two endpoints for exclusive, uninterrupted use of the private telephone line for the transmission of any communication. Verizon customers are charged a fixed fee for private telephone lines rather than a fee based on the amount of usage. (Stipulation of Facts I, Nos. 33, 40.) We conclude that Verizon's receipts from private telephone lines meet the taxability standard set forth by our Supreme Court in *Bell III.* As in that case, the sole purpose of a private telephone line is to transmit messages. In fact, a private line is used to transmit communication of any type, including voice, data, and/or video, between the two end points of the private line. (Stipulation of Facts I, No. 33.) Further, *Bell II* is analogous, as the court concluded that the leasing of equipment, such as wires, receivers, and transmitters, for the purpose of having a private telephone line was taxable. The leased equipment for private telephone lines in *Bell II* was specifically used for the transmission of messages. While Verizon also argues that its customers pay a flat fee for the service of having a private telephone line, the method of payment does not mean that messages are not transmitted over the private telephone line and that the receipts from the private telephone line are not taxable. *Bell III.* As with the auxiliary lines in *Bell III,* there is no purpose for a private telephone line other than to transmit messages. Thus, the Board properly concluded that Verizon's receipts from private telephone lines are taxable gross receipts.

### Directory Assistance Receipts

■ Directory assistance information, including telephone numbers and addresses, is available to Verizon customers when they make a call to Verizon's directory assistance platform and/or a directory assistance operator. Verizon charges its customers a fixed fee for each call made. Further, Verizon has a "ConnectReQuest" service where customers are charged if they ask Verizon to connect them to the requested telephone number. Verizon customers are only charged if they are

successfully connected to the requested telephone number. (Stipulation of Facts I, Nos. 20, 21, 25, 30, 31.) We also conclude that Verizon's receipts from directory assistance are subject to the gross receipts tax in accord with the analysis set forth in *Bell III*. While the court in *Bell III* does not specifically address directory assistance services, Verizon transmits telephone messages more effectively and satisfactorily by providing this service to its customers and that was the analysis of *Bell III*. In order for a Verizon customer to receive directory assistance, he or she must make a telephone call to Verizon's operator, thus, transmitting a message. For the same reason, we conclude that Verizon's "ConnectReQuest" service is subject to the gross receipts tax. When a Verizon customer requests a Verizon operator to dial a telephone number for the Verizon customer and the call is completed, a telephone message has been transmitted. Thus, because the sole purpose of these services is to transmit messages, and the directory assistance and "ConnectReQuest" services can be analogized to auxiliary lines, we conclude that both are subject to the gross receipts tax under section 1101(a)(2) of the Code.

*Non-recurring Service Charge Receipts*

■ Non-recurring service charges, including telephone line installation, moves or changes to telephone lines and service, and repairs of telephone lines, are · separately stated on Verizon customers' monthly telephone bills. Installation charges are incurred when: (1) there is no existing telephone service at the customer's location, (2) telephone service at the customer's location is being switched to Verizon from another telephone company, (3) telephone service at the customer's location will continue to be provided by Verizon, but the customer is new to that location, or (4) an existing Verizon customer wishes to add additional telephone lines at a particular location. If there is any inside wiring that is necessary, Verizon customers may either have Verizon perform the work, perform the work themselves, or hire a third party to perform the work. (Stipulation of Facts I, Nos. 42–44, 55, 57, 60, 62, 67, 71.) Further, we note that Verizon stipulated that a finding by this Court that any one of the non-recurring service charges is taxable constitutes a finding that all of the non-recurring service charges are taxable, because Verizon is unable to distinguish the charges attributable to each of the three categories for non-recurring service charges. (Stipulation of Facts II, No. 19.)

Unlike receipts from private lines and directory assistance, we conclude that section 1101(a)(2) of the Code does not apply to cover receipts from the nonrecurring service charges. We note that non-recurring service charges were not challenged in *Bell III* and are distinguishable from the charges discussed therein. However, the court in *Bell II* specifically discussed non-recurring service charges. While the statutory language at the time of *Bell II* differed from section 1101(a)(2) of the Code, the *Bell II* court defined the term "traffic" in the Act of May 14, 1925, as meaning "transmission of messages," the same phrase that the *Bell III* court used in its analysis of the "messages transmitted" language found in section 1101(a)(2) of the Code. The *Bell II* court concluded that receipts from service charges, i.e. "work done by [Bell's] employees," were not taxable, because these receipts were not from the transmission of messages. Likewise, work done by Bell's employees to install telephone lines, move or change telephone lines or service, and repair telephone lines is not taxable, because no transmission of a message has occurred. Stated otherwise, no telephone messages are transmitted when Verizon performs non-recurring ser-

vices. Even further, Verizon customers now have more autonomy, as they own their telephone equipment and are allowed to complete the work on their own or contract out to third parties for inside wiring issues.

Because neither the Legislature nor the courts have broadened the scope of section 1101(a)(2) of the Code, the question regarding the inclusion of these nonrecurring charges in the gross receipts tax must be resolved in favor of Verizon.

*Wilson Products.*

Accordingly, we affirm the order of the Board insofar as it concludes that the private line and directory assistance charges are to be included in the gross receipts tax. Insofar as the Board's order concludes that the non-recurring service charges are also subject to this tax, we reverse.

## ORDER

AND NOW, this 5th day of July, 2013, the February 26, 2008 order of the Board of Finance and Revenue (Board) is affirmed insofar as it concludes that the private line and directory assistance charges are to be included in the gross receipts tax.

However, the order of the Board is reversed insofar as it concludes that the non-recurring service charges are also subject to this tax. Judgment shall become final unless exceptions are filed within thirty (30) days of the date of this order pursuant to Pa.R.A.P. 1571(i).