# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Level 3 Communications, LLC, | : | **CONSOLIDATED CASES** |
| Petitioner | : | |
| | : | |
| v. | : | Nos. 121 and 122 F.R. 2018 |
| | : | |
| Commonwealth of Pennsylvania, | : | Argued: November 6, 2024 |
| Respondent | : | |

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                  HONORABLE PATRICIA A. McCULLOUGH, Judge
                  HONORABLE MICHAEL H. WOJCIK, Judge
                  HONORABLE CHRISTINE FIZZANO CANNON, Judge
                  HONORABLE LORI A. DUMAS, Judge
                  HONORABLE STACY WALLACE, Judge
                  HONORABLE MATTHEW S. WOLF, Judge

## *OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                         FILED: January 29, 2025

In these consolidated cases, Level 3 Communications, LLC (Petitioner) petitions for review of the January 30, 2018 orders of the Board of Finance and Revenue (Board), which affirmed the Board of Appeals' (BOA) denials of Petitioner's request for a refund of the gross receipts tax (GRT) it paid on receipts from the sales

of certain private line services for tax year 2014 under Section 1101(a)(2) of the Tax Reform Code of 1971 (Code).[1]  After careful review, we affirm the orders of the Board.

## I.    Background

The relevant facts and procedural history of this case are as follows. Petitioner is a Delaware telecommunications company doing business in Pennsylvania and headquartered in Broomfield, Colorado.  On April 7, 2017, Petitioner filed petitions with the BOA seeking a refund (Refund Petitions) of the GRT it paid on the sale of "non-voice" services that it had reported in the "private line" categories on its 2014 tax return (Contested Services).  Specifically, the services for which Petitioner sought a refund were: "a. Wavelengths; b. Virtual Private Network [] Service; c. Ethernet Virtual Private Line []; d. Virtual Private Line Service []; e. Ethernet Private Line;  [and f.] Other Level 3 Private line services that are not sold or provisioned with a Level 3 Voice Service."  (Stipulation of Facts (S.F.), 23-24.)[2]  These Contested Services "offer customers a dedicated, uninterrupted communications channel exclusively for the use of customers, and allow those customers to securely (*i.e.*, protected from unauthorized access and use) and continuously transport voice, video and/or data as packets between specified fixed points."  (S.F., 25.)  The tax refund in dispute totals approximately $23,000,000.

On June 16, 2017 the BOA issued orders denying the Refund Petitions. Petitioner appealed the denial to the Board, which entered orders affirming the BOA's decision on January 30, 2018.  In doing so, it explained:

---

[1] Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. § 8101(a)(2) (imposing tax on "telegraph or telephone messages transmitted").

[2] In September of 2023, this Court granted the parties' joint application requesting to file a sealed stipulation of facts and stipulated record in addition to publicly available versions of the same. The publicly available documents include redactions of confidential taxpayer and proprietary information.

Petitioner's request to exclude private line revenue is denied. Every telephone company doing business in Pennsylvania must pay a tax on gross receipts received from "telegraph or telephone messages transmitted wholly within this State and telegraph or telephone messages transmitted in interstate commerce where such messages originate or terminate in this State and the charges for such messages are billed to a service address in this State. . . .", except for sales of access to the internet and sales for resale. 72 P.S. § 8101(a)(2). Petitioner's request to exclude the claimed amounts from its taxable gross receipts are denied because the gross receipts statute provides for no such reductions. *See id.* Further, treating the above named receipts as nontaxable is not supported by the decision in *Verizon Pennsylvania, Inc. v. Commonwealth*, 127 A.3d 745, 758 (Pa. 2015) (citing [*Commonwealth v. Bell Telephone Company of Pennsylvania*, 34 A.2d 531 (Pa. 1943)] [(*Bell 111,*)] and holding that "telephone messages transmitted" includes any item of equipment and any service which "renders the transmission of [telephone messages] more effective, or makes 'telephone communication more satisfactory'"). Petitioner's requests regarding the calculation of its taxable gross receipts are also denied because Petitioner has not shown how its self reported tax was incorrect. *See* 72 P.S. § 9705.

(Stipulated Record (S.R.) at 2.) This petition for review followed.[3]

The parties submitted expert reports to this Court, with Petitioner retaining communications and internet industry economist and consultant Dr. William Lehr, and the Board retaining Dr. Lee Selwyn, the Senior Vice President of the consulting firm Economics and Technology, which specializes in telecommunications economics, regulation, and public policy. With respect to private line services, Dr. Lehr explained:

---

[3] When considering an order of the Board, we engage in *de novo* review and are entitled to the broadest scope of review "because we function essentially as a trial court, even though we hear these cases in our appellate jurisdiction. *See generally* Pa. R.A.P. 1571." *Victory Bank v. Commonwealth*, 190 A.3d 782, 783 n.1 (Pa. Cmwlth. 2018) (case citation omitted).

The term "private line" is a generic term used by professionals in the communications technology and industry community to refer to a wide range of data transport service offerings, utilizing many different technologies, in many networking configurations, and in a wide range of capacities. A private line might be used for the purpose of providing telephone services or it might be used for the purpose of providing data services. Level 3's refund claim does not seek a refund with respect to all receipts from sales of private lines. Instead, the "Contested Services" include those of its receipts originally reported as taxable private lines on the GRT return, but which were not purchased with the purpose of providing "telegraph or telephone messages" services. For the purposes of this proceeding, it is sufficient to understand that private lines are generally "private" in so far as the providers (such as Level 3) [are] not privy to nor are they capable of monitoring the detailed uses to which a customer may put the private line.

(Expert Report of Dr. William Lehr, 12/20/23, at 6-7.)

In concluding that the Contested Services are not subject to the GRT, Dr. Lehr reasoned:

Whereas Verizon is a telephone company that has expanded into new markets, Level 3 is a data communications company that has expanded into offering some telephone services. This distinction is relevant to the challenge of identifying which services/revenues may be subject to the GRT. Consistent with this reasoning, it is clear that the Contested Services sold by Level 3 (a) were not designed, provisioned, sold, purchased, or used as part of Level 3's offering of telephone messaging services; nor (b) were they ancillary to effectuating any such service. Consequently, I conclude that Level 3's non-voice private line services do not constitute nor are they related to a "telegraph or telephone message" service, and therefore, are not subject to the GRT.
. . . .

4

All of the Wave and Ethernet private line products and most of the other Level 3 private line products offer much higher data rates, often in excess of 1Gbps [gigabits per second]. Private lines with those levels of capacity are ill-suited for provisioning telephone messaging services, although they may carry incidental telephone messaging traffic. A customer would not purchase those Contested Services with a purpose of obtaining telephone messaging service. Even though incidental telephone messaging traffic could be carried, in all such cases, Level 3 lacks the capability and incentive to monitor how customers use the traffic and to determine precisely whether any share of the capacity of such private lines may be used to carry telephone traffic. However, it is reasonable to infer that if any telephone traffic is carried, it represents at most a few percent of the total traffic because of the low capacity it requires as compared to the substantial capacity that the customer chose to purchase when it bought the Contested Services. Therefore, the purpose for which the Contested Service was purchased or is being used is unrelated to telephone message service.

Consequently, it is clear that (a) none of Level 3's Contested Services are sold or used as a telephone message service; and (b) Level 3's Contested Services are not sold in support of telephone services sold by Level 3 or anyone else. The Contested Services that are at issue here were not purchased for the purpose of telephone messaging services, should not have been assessed the GRT, and a refund ought to be granted.

*Id.* at 12, 22-23.

In contrast, Dr. Selwyn opined:

The GRT statute makes no reference either to the type(s) of technology(ies) being utilized nor the volume, bandwidth, protocols, or other attributes of the taxable "messages transmitted." Thus, nothing in the GRT statute would support a conclusion that the use of current packet-based message transmission technology and protocols involves or

invokes a different taxation regime than had been applied by the Supreme Court to the Verizon private line services.

. . . .

Thus, the use of connectionless (packet-based) transmission versus continuous connection based transmission does not alter the fundamental function of the services embraced by the GRT statute — all involve the transmission of messages or facilities that support or enhance the transmission of voice, data, and/or video messages. There is no technology-based "bright line" between the functions supported by the generation of telecommunications services that the Pennsylvania legislature made subject to the GRT nearly a century ago and the current generation of telecommunications services such as the Contested Services being offered by Level 3. I see no basis for any conclusion other than that these Contested Services fall well within the scope and legislative intent of the GRT statute and the *Verizon* GRT Case's holding: [] all provide taxable messages transmitted.

(Expert Report of Dr. Lee. L. Selwyn, 12/20/23, at 29-30.) Dr. Selwyn emphasized:

in the *Verizon* GRT Case . . . Verizon and the Commonwealth stipulated that **Verizon's private lines were used for voice, data and/or video**. And as evidenced by statements in Verizon's 2004 and 2014 annual reports, this was clearly the case. **The high bandwidth and packet technologies being used by Level 3 to support its Contested Services are in no sense unique to Level 3; these technologies are being used by Verizon, by AT&T and by most other telecommunications carriers** across the United States and abroad. Similarly, while the specific brand names that Level 3 has assigned to its Contested Services may be unique to Level 3, comparable services based upon the very same technologies and supporting the very same functions are regularly being provided by and available from other carriers, including Verizon and AT&T.

6

(Selwyn Reply Report, 1/24/24, at 29) (emphasis added).

## II. Analysis

On appeal, Petitioner contends that because the Contested Services do not serve a "voice purpose" in that they are not voice services or otherwise telephone related, they are not subject to the GRT under the standard set forth in *Verizon*. (Petitioner's Br. at 21.) Petitioner maintains that the plain language of the GRT statute reaches only gross receipts from "telegraph or telephone messages transmitted" and does not include all receipts earned by a communications company. *Id.* at 22. According to Petitioner, because it provides services that transport high volumes of data at a capacity far in excess of low-capacity telephone messaging transmission to sophisticated customers, the Contested Services are not taxable voice services. *Id.* at 31, 34.

As previously noted, Section 1101(a)(2) of the Code governs the imposition of taxes on gross receipts received from the sale of telecommunications services within the Commonwealth.[4] This section specifies which entities are subject to the tax and what transactions are excluded from the gross receipt calculation. It provides in relevant part:

> **(a) General Rule.**--Every pipeline company, conduit company, steamboat company, canal company, slack water navigation company, transportation company, and every other company, association, joint-stock association, or limited partnership, now or hereafter incorporated or

---

[4] To the extent this case involves statutory interpretation, our standard of review is *de novo* and our scope of review is plenary. *Dechert LLP v. Commonwealth*, 998 A.2d 575, 579 (Pa. 2010). Our object in interpreting a statute is to ascertain the intent of the General Assembly, the best indicator of which is the plain language of the statute itself. *R.W. v. Department of Education (Professional Standards & Practices Commission),* 304 A.3d 79, 88 (Pa. Cmwlth. 2023), *appeal granted,* 321 A.3d 862 (Pa. 2024). Where statutory language is clear and unambiguous, we must give effect to its words and may not look beyond its plain meaning under the guise of pursuing its spirit. *Id.*

organized by or under any law of this Commonwealth, or now or hereafter organized or incorporated by any other state or by the United States or any foreign government, and doing business in this Commonwealth, and every copartnership, person or persons owning, operating or leasing to or from another corporation, company, association, joint-stock association, limited partnership, copartnership, person or persons, any pipeline, conduit, steamboat, canal, slack water navigation, or other device for the transportation of freight, passengers, baggage, or oil, except motor vehicles and railroads, and every limited partnership, association, joint-stock association, corporation or company engaged in, or hereafter engaged in, the transportation of freight or oil within this State, and **every telephone company, telegraph company or provider of mobile telecommunications services** now or hereafter incorporated or organized by or under any law of this Commonwealth, or now or hereafter organized or incorporated by any other state or by the United States or any foreign government and doing business in this Commonwealth, and **every limited partnership, association, joint-stock association, copartnership, person or persons, engaged in telephone or telegraph business or providing mobile telecommunications services in this Commonwealth**, shall pay to the State Treasurer, through the Department of Revenue, a tax of forty-five mills with a surtax equal to five mills upon each dollar of the gross receipts of the corporation, company or association, limited partnership, joint-stock association, copartnership, person or persons received from:

(1) passengers, baggage, oil and freight transported wholly within this State;

(2) **telegraph or telephone messages transmitted** wholly within this State and **telegraph or telephone messages transmitted** in interstate commerce where such messages originate or terminate in this State and the charges for such messages are billed to a service address in this State, **except gross receipts derived from**:

8

(i) the sales of access to the Internet, as set forth in Article II, made to the ultimate consumer;

(ii) the sales for resale to persons, partnerships, associations, corporations, or political subdivisions subject to the tax imposed by this article upon gross receipts derived from such resale of telecommunications services, including:

(A) telecommunications exchange access to interconnect with a local exchange carrier's network;

(B) network elements on an unbundled basis; and

(C) sales of telecommunications services to interconnect with providers of mobile telecommunications services; and

(iii) the sales of telephones, telephone handsets, modems, tablets and related accessories, including cases, chargers, holsters, clips, hands-free devices, screen protectors and batteries[.]

72 P.S. § 8101(a)(1)-(2)(i), (ii), (iii) (emphasis added).

In *Verizon*, the Pennsylvania Supreme Court interpreted this provision in determining whether certain services provided by Verizon, including directory assistance and the installation of private phone lines, were subject to the GRT. The parties stipulated that the type of private line at issue was "a dedicated, uninterrupted telecommunications channel typically leased by the customer from a telecommunications provider that interconnects two locations and provides the customer with exclusive use of that telecommunications channel that is used for the transmission of communications of **any** type (*i.e.*, **voice, data, and/or video**) between the two endpoints of the private line." *Verizon*, 127 A.3d at 760 n.18 (emphasis added). In considering the language of the operative phrase "telephone messages transmitted" in Section 1101, the *Verizon* Court noted that it was not writing on a blank slate, as it had already interpreted the meaning of this language in *Bell III*. The Court explained:

9

In *Bell III*, we held that "telephone messages transmitted" includes **any item of equipment, and any service which "renders the transmission of [telephone messages] more effective," or makes "telephone communication more satisfactory."** *Bell III*, 34 A.2d at 533. Because the General Assembly has not seen fit to limit the definition of this provision in the manner Verizon suggests—*i.e.*, narrowing it to only the act of transmitting and receiving individual telephone messages—we will not substitute our judgment for that of the legislature and, through a new interpretation, rewrite the statute in the manner which Verizon desires.

*Verizon*, 127 A.3d at 758 (emphasis added). The Court further noted:

In addition to the strong presumption that our interpretation of this statutory provision in *Bell III* has been in harmony with the General Assembly's intent due to the fact that body has chosen not to amend that language in response to that decision, we also find it significant that, since *Bell III*, the **legislature has specifically elected to exempt from this tax certain other equipment and services sold by telephone companies, but not the equipment and services at issue in this case**. . . . [I]n 2000, the General Assembly amended 72 P.S. § 8101 to expressly exclude from the category of subjects of taxation comprising "telephone messages transmitted" certain services which telephone companies such as Verizon directly sell to all customers, namely, sales of access to the internet. 72 P.S. § 8101(a)(2)(i). The General Assembly also excluded sales of telecommunications services by telephone companies to other private and governmental customers which are required to pay the gross receipts tax upon their resale of such services. 72 P.S. § 8101(a)(2)(ii). As this illustrates, the General Assembly is eminently capable of expressly excluding certain services and equipment sold by telephone companies from the gross receipts tax. **The fact that the legislature has declined to provide such an exclusion for the services and equipment at issue in this case, even though it did so for other enumerated types of services**

10

**and equipment, underscores, in our view, its intent not to exclude these services and equipment from the gross receipts tax.**

*Id.* at 759 (emphasis added).

Instantly, as found by the BOA and similar to *Verizon*, none of Petitioner's claimed technological distinctions are consistent with either the statutory language of Section 1101 or applicable caselaw, as these Contested Services continue to serve the same function of transmitting messages. The record substantiates these findings. *See* Expert Report of Dr. Lee. L. Selwyn, 12/20/23, at 30 ("The use of connectionless (packet-based) transmission versus continuous connection based transmission does not alter the fundamental function of the services embraced by the GRT statute — all involve the transmission of messages or facilities that support or enhance the transmission of voice, data, and/or video messages.") The holding of *Verizon* is broad and makes clear that the statute encompasses all technologies that have the function of transmitting messages, regardless of whether the mode is "voice, data, and/or video." *Verizon*, 127 A.3d at 760 n.18. The *Verizon* Court also emphasized that the legislature has specifically elected to exempt from this tax certain other services sold by telecommunications companies, such as sales of access to the internet directly to consumers, but that it chose not to exclude the services at issue in that case.

Likewise, here, and consistent with Section 1101(a)(2) of the Code, no equivalent statutory exception exists with respect to Petitioner's non-voice personal line services. Instead, the statute does not mention the term "voice" at all and the statutory language provides no indication that a service is no longer taxable once it reaches a large bandwidth size or some other threshold. As in *Verizon*, the fact that the legislature elected to include a comprehensive list of exceptions for the tax, but did not include non-voice services in that list of exemptions, demonstrates that it knew how to

11

carve out exceptions but simply chose not to do so with respect to such services. We also note, as Dr. Selwyn pointed out, that the high bandwidth technologies Petitioner uses to support its Contested Services are far from unique and are used by most telecommunications carriers, albeit under different brand names. *See* Selwyn Reply Report, 1/24/24, at 29.

In sum, because the Contested Services fulfill the purpose of making the process of transmitting messages more satisfactory, the fees Petitioner charges its customers for those services are properly taxable under 72 P.S. § 8101(a)(2). Accordingly we affirm the orders of the Board.

_____
PATRICIA A. McCULLOUGH, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Level 3 Communications, LLC,
                Petitioner

        v.

Commonwealth of Pennsylvania,
                Respondent

:  **CONSOLIDATED CASES**
:
:
:  Nos. 121 and 122 F.R. 2018
:
:
:

## *ORDER*

AND NOW, this 29th day of January, 2025, the January 30, 2018 orders of the Board of Finance and Revenue are hereby AFFIRMED.

_____
PATRICIA A. McCULLOUGH, Judge